### 32857. POTTS v. THE STATE.
### 33259. POTTS v. THE STATE.

BOWLES, Justice.

These two death cases have been consolidated for consideration in this court. Although these appeals are from two separate jury trials, one in Cobb County and the other in Forsyth County, the cases are closely interrelated inasmuch as they involve the same appellant, Jack Howard Potts, in the commission of a series of crimes during a continuous intercounty crime spree.

In Case No. 32857, the appellant and Norma Delores Blackwell were indicted in Cobb County and charged with the armed robbery and aggravated assault of Eugene

Robert Snyder, and the kidnapping and armed robbery of Michael D. Priest. The appellant was tried separately and found guilty on all counts. The jury found statutory aggravating circumstances to the kidnapping and armed robbery of Michael D. Priest, and death sentences were imposed for each of those offenses. The appellant was also sentenced to life imprisonment for the armed robbery and ten years for the aggravated assault of Eugene Robert Snyder.

In Case No. 33259, appellant was indicted in Forsyth County for the murder of Michael D. Priest. He was convicted by a jury and, after finding statutory aggravating circumstances, was sentenced to death.

### I. Summary of the Evidence

In both cases the state presented evidence from which the juries were authorized to find the following:

On May 8, 1975, appellant Potts and Norma Blackwell persuaded Eugene Robert Snyder to drive them to Marietta, Georgia, from Shake Rag, a community located in Forsyth County. Potts and Blackwell along with Snyder and a friend, Donna Glaze, got into Snyder's pick-up truck and proceeded toward Marietta with appellant driving. As the group drove along Sewell Mill Road in Cobb County, Potts shot Snyder through the left ear with a pistol. Snyder was able to remove the key from the ignition and, after realizing he was not seriously injured, requested Potts to take him to a hospital. Potts then shot Snyder in the nose. Snyder acted as if he were unconscious while Potts dragged him out of the truck, off onto the side of the road. Potts removed some cash and other items from Snyder's person while directing his female companions to clean up the truck.

Unable to find the key to the ignition of the truck, the appellant walked to the nearby home of Paul Gurley, who, at the time, was being visited by his daughter and her husband, Michael D. Priest. Potts told them that there had been an accident, that a man had been hurt, and that he needed a ride. Priest volunteered to help the appellant and, shortly thereafter, the two left in Priest's automobile. Upon their arrival at the pick-up truck, Priest saw Snyder lying in a ditch and attempted to go help him, but Potts

directed him at gunpoint to drive the group in his automobile toward Marietta. Priest pled for his life while Potts threatened him with the gun. On the trip back to Forsyth County the car made a stop and Potts began to drive while he held the gun on Priest. Potts stopped the car on a dirt road in Forsyth County leading to the trailer where he and the two females had met earlier in the day. He forced Priest out of the car at gunpoint, into an area by the road with high grass. Priest continued to plead with Potts for his life. When Priest said, "Oh my God, don't kill me," Potts responded that there was no such thing as God, and that he would determine whether Priest would live or die. Potts then put the gun to Priest's head, shot and killed him.

After Priest was killed, the appellant, Norma Blackwell and Donna Glaze removed personal effects from the victim's automobile, changed the license plate and headed south. Donna Glaze fled from the other two at a motel and contacted local authorities. The appellant and Norma Blackwell were apprehended on a farm near Quitman, Georgia, after a gunfight with police officers.

## II. Enumerations of Error
### A. Case No. 32857

1. Appellant's first enumeration of error contends that the trial court improperly excused a prospective juror in violation of Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 L.Ed.2d 776) (1968).

When his name was called during the voir dire examination, the juror stated: "Your Honor, I am as a matter of conscience, opposed to the death penalty." The assistant district attorney then asked the juror the following question, "Could you listen to the evidence in the case. . . listening specifically to the facts of the case, could you conscientiously include based on your consideration of the facts, a death penalty as one of the types of punishment which could be imposed in the case?" The juror responded *unequivocally*, "I could not." The state then moved to excuse the juror for cause, whereupon the court asked the following question of the juror, "Are your reservations towards capital punishment such that you could never vote to impose the death penalty,

regardless of the facts in the case?" The juror responded, "Your Honor, I believe so. Yes, Sir. I have never been posed with that question. I don't know yet."

When viewed in its entirety, the questioning process clearly shows that this juror could not vote to impose the death penalty regardless of the facts and circumstances that might emerge in the course of the proceedings. The juror's responses satisfy the tests set forth in Witherspoon v. Illinois, supra, and its progeny, Davis v. Georgia, 429 U. S. 122 (97 SC 399, 50 LE2d 339) (1977), and, therefore, it was not error for the trial court to excuse the prospective juror for cause. See also *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977).

2. The appellant's second enumeration of error alleges that the trial court erred in allowing co-indictee Norma Blackwell to testify in the case without disclosing that she allegedly had or was negotiating a substantially lighter sentence in exchange for her testimony.

In *Allen v. State,* 128 Ga. App. 361, 363 (196 SE2d 660) (1973), the United States Supreme Court's decision in Giglio v. United States, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972), was interpreted to say that "evidence of any understanding or agreement as to future prosecution of an accomplice, on whose testimony the state's case almost entirely depends, is relevant to his credibility; the jury is entitled to know of it; the prosecutor has a duty to disclose it; and the failure to make this disclosure violates due process and requires the reversal of the conviction and a remand for new trial." In order for there to be a reversal, however, there must be evidence that such information existed at or before trial, and that such information was actually withheld. *Fleming v. State,* 236 Ga. 434 (224 SE2d 15) (1976); *Eades v. State,* 232 Ga. 735 (208 SE2d 791) (1974).

During testimony in the instant case, both Norma Blackwell and her attorney denied that she had or was negotiating a substantially lighter sentence in exchange for her testimony. The sole evidence presented by appellant in support of his contention is found in the transcript of a hearing held June 15, 1976, wherein co-indictee Norma Delores Blackwell entered a negotiated plea of guilty to aggravated assault on the

prosecutor's recommendation that she be given a sentence of ten years with one to serve, and that the other three charges against her be dismissed. In presenting this recommendation, the assistant district attorney stated to the court, "We have a negotiated plea in this case *which has been negotiated before the trial of the case of Jack Howard Potts.*"

The appellant contends that the italicized portion of the assistant district attorney's statement represents an admission in judicio by the state that a negotiated plea had in fact been entered between the state and Norma Blackwell prior to the appellant's trial. The state, however, contends that the assistant district attorney's statement was erroneous, and in support thereof has supplemented the record of this case with affidavits of both the assistant district attorney and Norma Blackwell's attorney which state that her plea had been negotiated on March 26, 1976, fifteen days after the conclusion of appellant's trial. Further, we note that during the hearing on Norma Blackwell's negotiated plea the assistant district attorney stated, "It was our feeling that, based on her story to us, *and based on the testimony developed at trial,* the only thing we could really connect her with was the aggravated assault on Robert Snyder. . . And so, for those reasons we have made the recommendation." (Emphasis supplied.)

The assistant district attorney's recommendation could not have been based upon testimony developed at the appellant's trial until the trial had taken place. This supports the state's contention that the assistant district attorney's statement made during the June 15th hearing was, in fact, erroneous.

There being no evidence that Norma Blackwell had or was negotiating a substantially lighter sentence in exchange for her testimony at the appellant's trial, or that such information had been withheld, there is no basis for the application of the rules set forth in Giglio v. United States, supra, and *Allen v. State,* supra. Therefore, appellant's second enumeration of error is without merit.

3. Appellant's third enumeration of error contends that the trial court erred in allowing the state to ask leading questions of a witness in an attempt to impeach

her without determining whether or not the state had been entrapped by her testimony.

Prior to trial, the witness had made a statement to GBI agents. She told them that the appellant, shortly after the commission of the crime, had stated in her presence, "I've killed five people. I'm going to get out of here because they will catch me." On direct examination at trial, the assistant district attorney asked the witness whether she recalled making a statement to GBI agents regarding what the appellant had said. She responded that she did; however, she did not testify concerning the statement mentioned above. The assistant district attorney once again propounded the question to the witness at which time counsel for the defense objected, on grounds that the assistant district attorney was leading the witness and should be bound by her original answer. The court sustained counsel's objection. The assistant district attorney then stated, "Your Honor, I have no alternative but to plead that I have been entrapped by this witness *on what she has not said,* prior to having pleaded entrapment." At this point, a discussion was held outside the presence of the jury. The witness was asked whether she had made the above statement to GBI agents. She responded that she had. The assistant district attorney then stated, "If she answers the question as she just answered, I have not been entrapped because she's answering the same thing she's answered before. That's all I'm trying to get her to do, testify to what she said before, whether or not it's true." When the jury returned, the assistant district attorney, over objection, asked the witness whether the appellant had made any statement in her presence. The witness stated that he had, and then testified concerning the statement the prosecutor sought.

Early in the testimony of this witness, the court recognized that she was a reluctant witness. Under these circumstances we find that the trial court did no more than exercise its discretion pursuant to Code Ann. § 38-1706 to permit leading questions "when, from the conduct of the witness or other reason, justice shall require it." See *English v. State,* 234 Ga. 602 (216 SE2d 851) (1975); *Shouse v. State,* 231 Ga. 716 (11) (203 SE2d 537) (1974); *Durham v. State,* 70 Ga. 264 (11) (1883);

*Sherrell v. State,* 141 Ga. App. 502 (4) (233 SE2d 869) (1977).

The assistant district attorney was not entrapped by the witness' statement. The problem presented was that she failed to testify to the fact in question. The trial court did not abuse its discretion in allowing the assistant district attorney to lead the witness.

4. In his fourth enumeration of error, appellant contends that the trial court erred in denying his motion for mistrial after the state had improperly placed his character into evidence.

Immediately after the shooting of Michael Priest, the appellant, Norma Blackwell and Donna Glaze returned to a trailer occupied by a witness in the case. They were bloody and appellant asked if they could wash off. The two females changed into the witness' sister's clothes and burned theirs. The witness testified that during this time the appellant stated, "I killed five people," and that, "He told my mother that he had killed five people and he wanted to get out of there before they caught him."

It is well recognized in Georgia that "[D]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of res gestae." Code Ann. § 38-305.

We hold that statements made while washing away blood and burning the clothes worn during the commission of crimes are a part of the res gestae and are admissible as such (*Hawes v. State,* 240 Ga. 327 (6) (240 SE2d 833) (1977)), notwithstanding the fact they may show other criminal conduct on the part of the one who made the statement. *Bell v. State,* 234 Ga. 473 (216 SE2d 279) (1975); *Davis v. State,* 233 Ga. 638 (212 SE2d 814) (1975); *Shouse v. State,* 231 Ga. 716, supra, p. 719. Appellant's enumeration of error is without merit.

5. Appellant's enumeration of error number five contends that the trial court erred in allowing the state to introduce, over objection, evidence requested by the defense in its Brady motion, but not turned over by the state.

On December 10, 1975, the appellant filed a "motion for discovery and to compel disclosure," requesting,

among other things, a list and complete description of all physical evidence in possession of the state and a list of all items or physical evidence submitted to any lab for any type test, together with findings thereof. Paragraph four of that motion further requested the names of any persons who had been granted immunity by the state from prosecution in the case, or to whom the state had indicated they did not intend to prosecute as a defendant in the case. In response to that motion, the court granted the defense permission to inspect the district attorney's files.

The merits of the request contained in paragraph four of appellant's Brady motion were addressed in response to enumeration of error two, and found to be without merit. As regards the other requests contained in appellant's motion, the appellant contends that the state's failure to make available to him two photographs, a gun, spent bullets, and other cartridges, constitutes a violation of Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

In Brady v. Maryland, supra, it was held that, "Suppression by the prosecution of evidence favorable to an accused who has requested it violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Defendant, however, has the burden of showing that the evidence withheld from him "so impaired his defense that he was denied a fair trial within the meaning of the Brady rule." *Wisdom v. State,* 234 Ga. 650, 652 (217 SE2d 244) (1975); *Lundy v. State,* 139 Ga. App. 536 (228 SE2d 717) (1976).

Neither at trial nor on appeal has appellant shown that this evidence was favorable to him or that the introduction of the alleged withheld evidence impaired his defense or denied him a fair trial. Under these circumstances, no violation of Brady is present. Appellant's enumeration of error is, therefore, without merit.

6. The appellant alleges in Enumeration 6 that the trial court erred in allowing state's Exhibits 1B, 4 and 14 to be introduced in evidence without being properly identified.

We have examined the transcript and find that each

of the items of physical evidence complained of had been properly identified by the state's witnesses and the trial court did not err in allowing them in evidence.

7. Appellant's seventh enumeration of error contends that the trial court erred in allowing the prosecution to read the facts of another case to the jury over defendant's objection.

As early as the pre-trial hearings in this case, the defense made an issue of venue when appellant moved to merge the offenses in this case with those in the Forsyth County case.

During his closing argument, the assistant district attorney was permitted, over objection, to recite the facts of *Krist v. State,* 227 Ga. 85 (179 SE2d 56) (1971). This case dealt with questions regarding venue as applied to a situation where aspects of a continuing criminal enterprise occur in different jurisdictions.

Although in criminal cases "[C]ounsel shall not be permitted . . . to read to the jury recitals of fact or the reasoning of the court as applied thereto . . . ," Code Ann. § 24-3319, it has been held that "it is frequently necessary to read the facts stated in the opinion, or contained in the report; and wherever they are read for the purpose of making clear the principle decided, it is entirely proper to read them, as well as the opinion." *Cribb v. State,* 118 Ga. 316 (45 SE 396) (1903); *Lewis v. State,* 109 Ga. App. 152 (135 SE2d 492) (1964); *Barfield v. State,* 89 Ga. App. 204 (79 SE2d 68) (1953). Cf., *Hanley v. State,* 128 Ga. 24 (57 SE 236) (1907).

In the instant case, a recital of the facts of the *Krist* case was necessary to a full understanding of the principle of law sought to be illustrated by the assistant district attorney and therefore, the trial court did not err in permitting the assistant district attorney to read the facts from this case to the jury.

8. In enumeration of error number eight, appellant contends that the trial court erred in denying his motion for change of venue based upon prejudicial pre-trial publicity affecting the partiality of the jurors. Appellant's motion was supported by newspaper articles which had reported the crime, and an affidavit of appellant.

In Georgia, "[A] motion for a change of venue

addresses itself to the sound discretion of the trial judge, and that discretion will not be disturbed on appeal unless it can be shown that there was an abuse of this discretion." *Coleman v. State,* 237 Ga. 84, 90 (226 SE2d 911) (1976); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Jarrell v. State,* 234 Ga. 410, 415 (216 SE2d 258) (1975); *Allen v. State,* 235 Ga. 709, 712 (221 SE2d 405) (1975).

The test regarding prejudicial pre-trial publicity is whether the jurors summoned to try the case have formed fixed opinions as to the guilt or innocence of the defendant from their exposure to the pre-trial publicity. *Young v. State,* 239 Ga. 53, 57 (236 SE2d 1) (1977); *Coleman v. State,* supra; *Krist v. Caldwell,* 230 Ga. 536 (198 SE2d 161) (1973); *Dutton v. State,* 228 Ga. 850 (188 SE2d 794) (1972).

The appellant has presented no evidence of fixed opinions on the part of the traverse jurors as to his guilt or innocence, and a reading of the record of the voir dire examination does not show that any of the jurors summoned to try the case had been prejudiced by the alleged inflammatory newspaper articles. In fact, the record affirmatively shows that of the fourteen jurors summoned to try the case, thirteen jurors stated on voir dire that they had not read or heard any pre-trial publicity, or if they had, they did not remember anything that they had read. The questioning of the one remaining juror failed to show that he had any fixed opinion as to the guilt or innocence of the appellant. In addition, the entire panel of prospective jurors was asked the following questions on voir dire, "Have you any prejudice or bias resting on your mind either for or against the prisoner at the bar, Jack Howard Potts?"; and, "Is your mind perfectly impartial between the State and the accused, Jack Howard Potts?" There were no positive responses to the first question nor any negative responses to the second.

Viewing the voir dire record, we cannot conclude that the trial court abused its discretion in overruling appellant's motion for a change of venue.

Further, we note that in order to find that the defendant did not receive a fair trial he must show, (1) that the setting of the trial was inherently prejudicial, or (2) that the jury selection process showed actual prejudice

to a degree that rendered a fair trial impossible. *Street v. State,* 237 Ga. 307, 311 (227 SE2d 750) (1976); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Harris v. State,* 237 Ga. 718, 730 (230 SE2d 1) (1976). We find no such showing.

Appellant's enumeration of error is without merit.

9. Appellant's enumerations of error numbers nine, ten and eleven are directed to matters for this court's consideration on sentence review. We have also determined that the charge of the court in this trial is not subject to the defects pointed out in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977) and in *Hawes v. State,* 240 Ga. 327, supra.

10. Appellant's twelfth enumeration of error contends that the trial court erred in denying his amended motion for new trial. Appellant's motion raised the general grounds and asserted the alleged violation of Witherspoon v. Illinois, we addressed in response to enumeration of error number one, and found to be without merit.

Having made a thorough review of the transcript we find there is sufficient evidence to support the verdict. The trial court did not err in denying appellant's motion.

B. Case No. 33259

11. Appellant's first enumeration of error in case No. 33259 alleges that the trial court erred in denying his plea of former jeopardy. The appellant contends that, having been convicted of kidnapping with bodily injury of Michael Priest in Cobb County, jeopardy attached to the homicide of Michael Priest, and therefore, appellant's subsequent conviction in Forsyth County for the murder of Michael Priest constitutes double jeopardy.

The Georgia Code distinguishes between two aspects of double jeopardy. "First, there are limitations upon multiple prosecutions arising from the same criminal conduct. Code Ann. § 26-506 entitled, 'Multiple prosecutions for same conduct' requires all crimes arising from the same conduct to be prosecuted in a 'single prosecution' *provided they are in the same jurisdiction* and are known to the prosecutor unless the court in the interest of justice orders separate trials. Code Ann. § 26-507 sets out in detail when a second prosecution is

barred." (Emphasis supplied.) *State v. Estevez,* 232 Ga. 316, 318 (206 SE2d 475) (1974). A prosecution is not barred within the meaning of Code Ann. § 26-507, "if the former prosecution was before a court which lacked jurisdiction over the accused or the crime." This is the procedural aspect or the bar to multiple prosecutions, intended to prevent an accused from being unduly harrassed by or threatened by successive criminal prosecutions.

In Georgia "[A]ll criminal cases shall be tried in the county where the crime was committed. . ." Code Ann. § 27-1101. In the instant case, it is undisputed that the murder of Michael Priest took place in Forsyth County and that the kidnapping with bodily injury took place in Cobb County. As a matter of law, the two offenses were not within a single court's jurisdiction, and could not have been tried together. Therefore, we find no procedural bar to the appellant's subsequent prosecution for the murder of Michael Priest in Forsyth County.

"The second policy expressed in the 1968 Georgia Criminal Code limits the convictions or punishments that may be imposed for crimes arising from the same criminal conduct. This is generally referred to as the *substantive* aspect of the double jeopardy principle in that it relates to the penalty for criminal conduct as distinguished from the procedural aspects of successive prosecutions discussed above." (Emphasis supplied.) *Estevez,* supra, p. 319.

When the same conduct of an accused establishes the commission of more than one crime, the accused may be prosecuted for but may not be convicted of more than one crime if, "[O]ne crime is included in the other." Code Ann. § 26-506 (a) (1). Code Ann. § 26-505 (a) and (b) establish *alternative* rules for determining when one crime is included in another as a matter of fact (Code Ann. § 26-505 (a)) *or* as a matter of law (Code Ann. § 26-505 (b)) so as to bar conviction and punishment for more than one crime.

Recently, in *Pryor v. State,* 238 Ga. 698, 701 (234 SE2d 918) (1977), we held that murder and kidnapping with bodily injury are not included crimes as a matter of law. However, some confusion surrounds the issue of whether these two offenses are included as a matter of fact

as a result of the discussion in *Pryor* of a hypothetical fact situation not then before the court.

As a matter of fact a crime is included when, "[I]t is established by *proof of the same or less than all the facts* of a less culpable mental state than is required to establish the commission of the crime charged." (Emphasis supplied.) Code Ann. § 26-505 (a). For proof of kidnapping with bodily injury it is necessary that the evidence show an unlawful abduction or stealing away and the holding of a person, plus the infliction of some bodily injury upon that person. Code Ann. § 26-1311. There is no requirement to prove death of the person kidnapped even if the injuries do result in death.

The indictment in Case No. 32857 alleged as the bodily injury the *killing* of Michael Priest. Under such an indictment, it was necessary for the state to prove *death*. However, the state had to prove the additional element of an unlawful abduction against the will of Michael Priest to accompany his killing in order to establish kidnapping with bodily injury. There was no requirement in the Cobb County case that the state prove the existence of malice aforethought, which was a necessary element of the murder conviction in Case No. 33259.

No matter what may have been put into evidence, the key consideration is whether one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the crime charged.

We hold that as a matter of fact, as well as a matter of law, the murder of Michael Priest and the kidnapping of Michael Priest with bodily injury were not included offenses so as to bar his being prosecuted and subsequently convicted of both crimes.

We do not treat here the issue of whether an allegation of proof which merely elevates the seriousness of the offense and the severity of punishment can constitute former jeopardy or whether a "twice use" for the crime and the punishment is permissible, since these issues have previously been discussed in the *Pryor* decision.

There being no procedural bar to appellant's prosecution for the murder of Michael Priest nor any substantive bar to his being convicted and punished for

that crime, the trial court did not err in denying appellant's plea of former jeopardy.

12. In enumeration of error number two, appellant contends that the trial court erred in failing to disqualify all prospective jurors and grant a continuance on its own motion after appellant's character was improperly put in issue.

During voir dire, *appellant's attorney* asked a prospective juror if he would be influenced in the case, if it were developed during the course of trial, that the defendant was in fact already under two previous death sentences. The assistant district attorney objected to the question as irrelevant and improper. The trial court sustained the objection.

The fact that appellant was already under two death sentences was put in the record by his own attorney on voir dire, cross examination and in final argument. Appellant himself, during the testimony of a state's witness, interrupted and stated, " . . .Judge Pope, I have already been tried on this and given a death sentence in the same case he is trying right now. . . Well, I know that I'm going to die in the electric chair. . ."

Whether erroneous or not, appellant cannot obtain a reversal for errors which he himself has committed or induced. See *Edwards v. State,* 235 Ga. 603 (221 SE2d 28) (1975); *Patterson v. State,* 233 Ga. 724, 727 (213 SE2d 612) (1975); *Joyner v. State,* 208 Ga. 435 (2) (67 SE2d 221) (1951); *Quattlebaum v. State,* 119 Ga. 433 (2) (46 SE 677) (1903).

We further note that appellant made no objection, motion for mistrial, or motion to disqualify the jury panel. The failure to interpose a timely objection precludes his raising this issue for the first time on appeal. See *Roberts v. State,* 231 Ga. 395 (202 SE2d 43) (1973); *Waller v. State,* 213 Ga. 291 (99 SE2d 113) (1957); *Sides v. State,* 213 Ga. 482 (2) (99 SE2d 884) (1957); *Pulliam v. State,* 196 Ga. 782 (6) (28 SE2d 139) (1943).

Appellant's enumeration of error number two is, therefore, without merit.

13. Appellant's enumeration of error number three complains of the failure of the jury to return a verdict consistent with the evidence of appellant's insanity.

The appellant pled not guilty by reason of insanity. At trial, two expert witnesses testified regarding the appellant's mental condition. Dr. Miguel A. Bosch, Director of the Forensic Psychiatric Center, Central State Hospital, was called as a witness for the state and testified that he examined the appellant in March of 1976. He testified that during the examination the appellant did not appear to be confused, was alert, cooperative, had good reality contact, and showed no signs of psychotic symptoms. Dr. Bosch further testified that at the time of the examination the appellant knew right from wrong, was sane, and most likely was sane when the crime was committed in 1975. The witness stated that following his examination, he sent a report to the court stating that appellant was mentally competent and legally sane.

A psychiatrist for the defense testified that he examined appellant and based upon his examination had concluded that appellant was probably suffering from paranoid schizophrenia and was most likely acting under a delusional compulsion. The witness admitted appellant would not talk about this alleged delusional compulsion, and testified that a person could fake paranoid schizophrenic symptoms. The witness also testified that during the two and one-half hour examination appellant was in good reality contact. In response to a series of hypothetical questions based upon the evidence presented in the case, the witness testified that such a person who manifested these same characteristics would know right from wrong.

As recently as *Durham v. State,* 239 Ga. 697, 698 (238 SE2d 334) (1977), we stated that "When the defense of insanity has been made under the general plea of not guilty, the defendant is still presumed sane, . . . The defendant bears the burden of showing, by a pre-ponderance of the evidence, that he was not mentally responsible at the time of the alleged crime. *State v. Avery,* 237 Ga. 865 (230 SE2d 301) (1976); *Grace v. Hopper,* 234 Ga. 669 (217 SE2d 267) (1975); *Rozier v. State,* 185 Ga. 317 (195 SE 172) (1938). The constitutional validity of placing upon the appellant the burden of proving his insanity has been recognized by the United States Supreme Court.

Patterson v. New York, [432 U. S. 197] (97 SC 2319, 53 LE2d 281) (1977)."

The presumption of sanity does not dissipate with the presentation of evidence to the contrary. *Durham v. State,* supra; *Johnson v. State,* 235 Ga. 486 (220 SE2d 448) (1975). The jury is free to reject the testimony of both lay and expert witnesses as to the sanity of an accused, and rely instead on the presumption of sanity with which the accused entered his trial. *Durham v. State,* supra; *Johnson v. State,* supra; *Carter v. State,* 225 Ga. 310, 311 (168 SE2d 158) (1969).

In the instant case, the jury rejected appellant's plea, and in light of the evidence, they were authorized to do so.

14. In enumeration of error number four, appellant alleges that the trial court erred during the pre-sentence hearing in allowing the jury to consider certain portions of appellant's previous criminal record.

Two weeks prior to trial, appellant was informed that the state intended to introduce appellant's previous record, to be used as an aggravating circumstance pursuant to Code Ann. § 27-2503. The notice contained two Fulton County convictions, one for robbery *listed under indictment number 82223,* the other for assault with intent to murder *listed under indictment number 82224.* During the pre-sentence hearing, the state attempted to introduce these two prior convictions. Appellant's counsel objected on grounds that indictments numbered 82223 and 82224 were not indictments brought against the appellant, and therefore, the state had failed to properly notify the appellant that the complained of convictions *listed under different indictment numbers* would be used in aggravation. The appellant tendered into evidence two exhibits; one, an indictment numbered 82223, being the State of Georgia v. Donald Harrison, charging him with seven counts of forgery; the other an indictment numbered 82224 being the State of Georgia v. Allen Hinote, charging larceny of an automobile. The court overruled appellant's objection, and the complained of convictions *listed under indictments numbered 83223 and 83224* were introduced into evidence.

The state's written notice to appellant had described the charges properly but apparently had given incorrect

indictment numbers. The record shows that the number of appellant's robbery *sentence* was 82223, but the matching *indictment number* was 83223. Appellant's assault with intent to murder *sentence* was numbered 82224, but the matching *indictment number* was 83224. It is clear that there was an error in the numbering between the indictments and sentences, and therefore, instead of listing indictment numbers, the state had inadvertently listed sentence numbers for the two convictions they wished to introduce as aggravation.

On appeal, appellant argues that because the notice listed sentence numbers, which differed from the indictment numbers of the two convictions introduced, he was not provided with adequate notice as required by Code Ann. § 27-2503.

Code Ann. § 27-2503 (a) provides that only such evidence in aggravation as the state *has made known to the defendant* prior to his trial shall be admissible at the sentencing phase of the trial. All the statute requires is "clear notice" to an accused of all previous convictions that the state intends to introduce at trial (*Hewell v. State,* 238 Ga. 578 (234 SE2d 497) (1977)), so as to "allow a defendant to examine his record to determine if the convictions are in fact his, if he was represented by counsel, and any other defect which would render such documents inadmissible during the pre-sentencing phase of the trial." *Herring v. State,* 238 Ga. 288, 290 (232 SE2d 826) (1977).

At the pre-sentence hearing, appellant did not contest the validity of the two convictions, nor did he raise any defect which would render them inadmissible.[1] The appellant did not ask for any additional time to examine the exhibits. Further, from the date of sentencing until the date of the hearing on his motion for new trial, appellant had approximately 16 months during which time to assemble evidence and examine the record to point out wherein the exhibits were not valid. At the hearing on

---

[1] The state's exhibits introduced showed on their face that the appellant had been represented by an attorney when he pled guilty to robbery and assault with intent to murder.

appellant's motion for new trial, William R. Kimsey, deputy clerk of the Fulton County Superior Court, testified that from the descriptions of the convictions contained in the notice of criminal record,. even with the erroneous indictment numbers, he would have been able to locate the proper cases in three minutes or less. He also testified that he had been familiar with appellant's counsel for many years, that appellant's counsel was a former district attorney and a former public defender in Fulton County, and that he was familiar with the operating procedures and docketing system of Fulton County.

Under these circumstances, we believe that appellant was provided with adequate notice of evidence of prior convictions the state intended to present, and that appellant was not misled by the transposition of indictment and sentence numbers. Appellant has not demonstrated any harm as a result of the alleged improper notification, and therefore, appellant's enumeration of error is without merit.

15. Appellant's fifth enumeration complains of several statements made by the assistant district attorney during the penalty stage of trial, and alleges that because of their prejudicial nature a reversal of his sentence is required.

Although the appellant made only one objection during the assistant district attorney's closing argument, we will rule on the propriety of all the remarks complained of, even though unobjected to at trial, because under the mandate of the death penalty procedure (Code Ann. § 27-2537 (c) (1)), this court must determine whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977); *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975).

We have considered many of the complained of statements in previous cases and have held adversely to appellant's contention. *Hill v. State,* 236 Ga. 703, 706 (224 SE2d 907) (1976); *Mason v. State,* 236 Ga. 46 (7) (222 SE2d 339) (1976); *Tamplin v. State,* 235 Ga. 20 (4) (218 SE2d 779) (1975); *Chenault v. State,* 234 Ga. 216 (7) (215 SE2d

223) (1975).

Two portions of the assistant district attorney's argument do, however, demand our comment. During his closing argument the prosecution read excerpts from Gregg v. Georgia, 428 U. S. 153, 183-184 (96 SC 2909, 49 LE2d 859) (1976) and *Eberhart v. State,* 47 Ga. 598, 610 (1872). Neither the passage from Gregg, nor the passage from *Eberhart* concerns the facts of those cases or the reasoning as applied to the facts in each case, but were mere obiter dicta. Therefore, as in *Hawes,* supra, "no violation of Code Ann. § 24-3319 is apparent." P. 336.

We must, however, also determine whether the passages read from *Eberhart* or Gregg resulted in the death penalty being imposed under the influence of passion, prejudice or any other arbitrary factor. We find that the passage read from Gregg was not inflammatory nor did it lead the jury to believe that they were not to consider mitigating circumstances. The excerpt from Gregg was merely a concise statement concerning the validity of retribution as a policy consideration in imposing the death penalty.

With reference to the excerpt quoted from *Eberhart,* we stated, in *Hawes,* supra, that although it was not improper for a district attorney to express to the jury the sentiments embodied in the quote, ". . . the district attorney's attribution of those sentiments to a justice of this court with the object of influencing the jury to impose the death penalty [is] improper and is disapproved. See *Croom v. State,* 90 Ga. 430 (4) (17 SE 1003) (1892)." Though in *Hawes,* supra, we declined to decide whether this alone would require a new trial on the issue of punishment, recently in *Presnell v. State,* 241 Ga. 49, we addressed this issue and held that the "written words of a since deceased jurist could not have inflamed the jury more than the facts of the case themselves," and therefore, the passage read from *Eberhart* did not result in the jury's imposition of the death penalty under the influence of passion, prejudice or any other arbitrary factor, and did not require a new trial.

As in *Presnell,* supra, the trial of this case occurred prior to our criticism of the procedure in *Hawes,* supra. We find that the facts of the instant case are no less

inflammatory than those in *Presnell,* supra, and therefore, the reading of the excerpt from *Eberhart* did not unduly influence the jury to impose the death penalty. We find no error in the assistant district attorney's closing argument, and therefore, appellant's enumeration is without merit.

16. In enumeration of error number six, appellant contends that the trial court erred in failing to include in his instructions to the jury at the pre-sentence hearing any mitigating circumstances.

Under Georgia law, mitigating circumstances are not required to be singled out in the charge. *Thomas v. State,* 240 Ga. 393, 401 (240 SE2d 887) (1977). We have thoroughly reviewed the instructions of the trial court during the sentencing phase of appellant's trial and find that the charge as given was not subject to the defects dealt with in our decisions in *Fleming v. State,* 240 Ga. 142, supra, and *Hawes v. State,* 240 Ga. 327, supra. Appellant's enumeration of error is without merit.

III. Sentence Review

In reviewing the death sentences imposed in these two cases we are required by Code Ann. § 27-2537 (c) to consider three questions:

First, we must determine "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." Code Ann. § 27-2537 (c) (1). After reviewing the records in both cases, we conclude that the sentences of death imposed on Jack Howard Potts were not imposed under any of the above factors.

Next, we must consider "whether . . . the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in section 27-2534.1 (b)." Code Ann. § 27-2537 (c) (2).

In Case No. 32857 the appellant received sentences of death for the crimes of kidnapping with bodily injury and armed robbery. The jury found the offense of kidnapping with bodily injury (the bodily injury being the death of Michael Priest) to have been committed while the offender was engaged in the commission of another capital felony, armed robbery of Michael Priest, and found the offense of armed robbery of Michael Priest to have

been committed while the offender was engaged in the commission of another capital felony, kidnapping of Michael Priest. The evidence in Case No. 32857 supports the statutory aggravating circumstances found. The death penalty for kidnapping with bodily injury is not unconstitutional where the victim is killed. *Stanley v. State,* 240 Ga. 341 (1977). See Coker v. Georgia, 433 U. S. 584 (97 SC 2861, 53 LE2d 982) (1977). However, pursuant to the rationale of our decision in *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974), the death sentence for armed robbery is reversed and remanded for sentencing. See also *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976).

In Case No. 33259, the jury found as statutory aggravating circumstances to the murder of Michael D. Priest, "(1) armed robbery of Eugene Robert Snyder; (2) the kidnapping of the person of Michael D. Priest resulting in bodily injury to said person; (3) the armed robbery of Michael D. Priest." Code Ann. § 27-2534.1 (b) (2). The evidence in Case No. 33259 supports each of the statutory aggravating circumstances found by the jury.

The imposition of two death sentences on the basis of mutually aggravating circumstances cannot be upheld. *Gregg,* supra. However, where the death sentences are legally and factually supported by additional aggravating circumstances, no violation of *Gregg,* supra, is present. *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975).

In Case No. 33259, without the armed robbery of Michael Priest, which was used to support the death sentence for kidnapping in Case No. 32857, the death sentence for murder is adequately supported by either of the two remaining statutory aggravating circumstances.

Finally, in our mandatory review of appellant's death sentences, we must decide "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Code Ann. § 27-2537 (c) (3).

In reviewing the death sentences in these cases, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for kidnapping or murder, and we find the similar cases listed in the appendix to support the

affirmance of these death sentences.

Jack Howard Potts' sentences to death for kidnapping and murder are not disproportionate to the death penalties imposed in similar cases considering both the crime and the defendant.

The judgments convicting the defendant of the offenses in Case No. 32857 and imposing the death sentence for the offense of kidnapping with bodily harm is affirmed. The sentence of death for armed robbery is reversed and remanded for resentencing. The judgment convicting the appellant of murder in Case No. 33259, and imposing the death penalty for that offense is affirmed.

*Judgment affirmed in part; reversed in part with direction. All the Justices concur, except Hall and Hill, JJ., who concur in the judgment and in all divisions except Division 11.*

32857, ARGUED OCTOBER 13, 1977 — DECIDED MARCH 16, 1978.

*Dupree & Staples, Stephen J. Olah, Barry Staples,* for appellant.

*Thomas J. Charron, District Attorney, Joseph L. Chambers, Assistant District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, G. Stephen Parker, Assistant Attorneys General,* for appellee.

33259, ARGUED FEBRUARY 14, 1978 — DECIDED MARCH 16, 1978.

*Boling & Rice, Larry H. Boling,* for appellant.

*Frank C. Mills, III, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General,* for appellee.

APPENDIX
Case No. 32857
Kidnapping Cases

*Henderson v. State,* 227 Ga. 68 (179 SE2d 76) (1970); *Akins v. State,* 231 Ga. 411 (202 SE2d 62) (1973); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12) (1974) *; *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975) **; *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977); *Stanley v.*

*State,* 240 Ga. 341 (1977) ***; *Thomas v. State,* 240 Ga. 393 (1977). ***

Case No. 33259
Murder Cases

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975) **; *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Dix v. State,* 238 Ga. 209 (232 SE2d 47) (1976); *Blake v. State,* 239 Ga. 292 (236 SE2d 637) (1977); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Stanley v. State,* 240 Ga. 341 (1977) ***; *Thomas v. State,* 240 Ga. 393 (1977). ***

---

*Although the death penalty in *Eberheart v. State,* supra, was set aside because no death was involved (Eberheart v. Georgia, 433 U. S. 917 (97 SC 2994, 53 LE2d 1104) (1977), it is a case in which the jury imposed the death penalty for kidnapping with bodily injury.

** Same case.

*** Companion cases.