**Jack Howard POTTS**

v.

**Sam AUSTIN, Warden, Georgia State Prison (two cases).**

**Civ. Nos. C80–964A, C80–46G.**

United States District Court,
N. D. Georgia,
Atlanta and Gainesville Divisions.

June 13, 1980.

---

Millard C. Farmer, Andrea I. Young, Joseph M. Nursey, Atlanta, Ga., for plaintiff.

John C. Walden, Senior Asst. Atty. Gen., Harrison Kohler, Susan V. Boleyn, Asst. Attys. Gen., Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

This is the life or death saga of a convicted murderer on death row. Over the past week these actions have steered a bizarre course, and now as a result of petitioner's actions, this pen writes of Jack Howard Potts probably for the last time.

Jack Howard Potts was arrested, tried, and convicted of heinous and despicable crimes against society. He was tried for separate crimes in Cobb and Forsyth Counties for what has been generally described as a "crime spree" which took place in 1975. Before he was apprehended, two persons were shot and one was killed, having been kidnapped and shot in the head at point blank range. Petitioner was tried and convicted in Cobb County, Georgia, for kidnapping, armed robbery, and aggravated assault. Approximately six months later he was convicted in Forsyth County, Georgia, of premeditated murder. He was sentenced to death on the convictions for murder, kidnapping, and armed robbery. Petitioner's trial attorneys appealed those convictions as a matter of right to the Supreme

Court of Georgia, which affirmed each of the convictions and the sentences of death as imposed for the kidnapping and murder convictions. *Potts v. State*, 241 Ga. 67, 243 S.E.2d 510 (1978). The court reversed the sentence of death as to the armed robbery conviction. *Id.* at 88, 243 S.E.2d at 525. For reasons that are not entirely clear, petitioner's attorneys did not petition for the issuance of a writ of certiorari to the Supreme Court of the United States. Having exhausted or otherwise foregone direct appellate review of his convictions, petitioner, through counsel, initiated a habeas corpus action in the state courts. A hearing was conducted on that action in the Superior Court of Tattnall County, and Mr. Potts was denied relief. That decision was then appealed to the Supreme Court of Georgia. While that appeal was pending before that court, Jack Potts, as he testified before this court, decided to dismiss his attorneys and withdraw his pending appeal. The petitioner testified that in November of 1979, December of 1979, and January of 1980, he requested by letter that the Supreme Court of Georgia dismiss his appeal. Apparently disregarding petitioner's request, the Supreme Court ruled on the application on January 8, 1980, denying petitioner's application for a certificate of probable cause for habeas corpus appeal and granting a motion to discharge the attorneys. From petitioner's testimony it was by his desire that the attorneys were dismissed, and, until June 4, 1980, petitioner insisted that sentence be imposed.

The story of Jack Howard Potts began to unfold in this court on Tuesday, June 3, 1980. Late in the afternoon of that day the clerk notified the court that separate habeas corpus actions had been filed by a "next friend" and that those actions had been assigned to this judge.[1] A review of the actions indicated that the petitioner was contending that Jack Howard Potts was incompetent to waive his right to federal

---

1. Case number C80–954A was filed on June 3, 1980, in the Atlanta division of this court. It was assigned to this judge on rotation assignment. Case number C80–45G was filed one day later in the Gainesville division of the court. That case was automatically assigned to this judge, who handles all cases in that division.

habeas corpus review. Also presented to the court in those actions were applications to stay execution pending full habeas corpus review. As Mr. Potts' execution was scheduled for June 5, the court immediately summoned petitioner's attorneys and representatives of the Georgia Attorney General's office. After conferring with counsel, the court scheduled a hearing to commence at 7:30 a. m. on June 4, 1980, to determine whether the petitioner was an appropriate "next friend" and, if so, whether Jack Potts was competent to make a knowing and intelligent relinquishment of a known right. See *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976). That hearing consumed most of the day of June 4. After hearing the testimony, including expert testimony of a psychologist, reviewing the documentary evidence, and viewing a videotape of a press conference held by Mr. Potts on June 2, 1980, the court determined that there was not a proper "next friend" before the court and that, even if there was, the evidence not only failed to raise an issue as to competence but showed beyond a reasonable doubt that Mr. Potts was competent. Pursuant to those determinations, the court denied the applications for a stay of execution and dismissed the actions as failing to state a claim.[2]

The court's ruling was made at approximately 6:15 p. m.[3] At approximately 7:15 p. m. on that same evening, some 15 hours before the scheduled execution, the court received notice by telephone that Jack

Howard Potts had signed an authorization at the Georgia State Prison at Reidsville for Millard Farmer, Andrea Young, and Joe Nursey to act as his attorneys and to bring a federal habeas corpus action attacking the constitutionality of his state court convictions. Mr. Nursey was in Atlanta and had previously prepared separate actions and applications for a stay of execution with Mr. Potts as petitioner. After the office of the Attorney General contacted the warden at Reidsville and confirmed to the court that Mr. Potts had, indeed, authorized the actions, Mr. Nursey was allowed to file those pleadings with the deputy clerk in chambers. As Jack Howard Potts had not previously exercised his right to federal habeas corpus review, the court granted his application for a stay of execution and determined that the petitions should be submitted to the magistrate for a report and recommendation and proceed as any other habeas corpus petition in this court.[4] The stay was communicated to the state officials, and the sentence was not carried out as scheduled.

The court then returned to the trial of another criminal matter which had been interrupted by the emergency petitions on Mr. Potts' behalf. That trial proceeded without incident on Thursday and Friday. After court had adjourned on Friday, one of the court's law clerks received a telephone call from a person identifying herself as Carolyn Potts, the mother of Jack Howard Potts. She indicated that she had a letter

---

2. The original petitioner was the Reverend Murphy Davis, a Presbyterian minister, who had had limited contact with petitioner. At the hearing Leonard Potts, Jack Howard Potts' first cousin, was added as an additional petitioner. The evidence showed that Leonard Potts had not seen Jack Howard Potts in over a year and had spoken to him on only one occasion. The court found that neither Rev. Davis nor Leonard Potts had standing as "next friends." Late in the day as the hearing was drawing to a close, counsel notified the court that Jack Howard Potts' brother, John Potts, who had been with him most of the day, wished to join the suit as an additional next friend petitioner. Because it appeared likely from counsel's representations that John Potts would be an appropriate next friend and because of the gravity of the situation, the court made a determination

on the merits of Jack Howard Potts' competency even though John Potts never appeared in the actions. Those proceedings are the subject of the court's order of June 6, 1980. *Davis v. Austin*, Case Nos. C80–954A and C80–45G.

3. At about 7:00 p. m. the court received notification from the clerk of the Fifth Circuit Court of Appeals that an emergency panel had denied a stay pending appeal to that court as well as a stay pending application for relief to the Supreme Court of the United States.

4. *See Potts v. Austin*, Case Nos. C80–954A and C80–45G (orders of June 4, 1980). The court was in the process of preparing orders for the respondent to show cause why the writ should not issue. Subsequent events obviated the necessity of those orders.

signed by her son on that day, witnessed by her, and addressed to the court, which indicated that her son did not wish to be represented by Millard Farmer and desired to withdraw his habeas corpus petitions. Because Mrs. Potts was several hours away from the courthouse, en route from the Georgia State Prison, the court made arrangements for someone to be present to receive the letter at the courthouse. The letter was received at approximately 6:30 p. m., and the court was informed of its contents. The letter is attached as Appendix "A." On Monday morning the court concluded the evidence in the other criminal matter and when the jury retired to deliberate, the court summoned Mr. Potts' attorneys and representatives of the Attorney General's office for a conference.[5]

Neither the court nor counsel was aware of any precedent directly addressing the situation. For that reason the court proposed to counsel a procedure to determine whether or not Mr. Potts' petitions would be withdrawn as his letter requested. The court first determined that it would not act in any way to petitioner's prejudice on the letter received from petitioner's mother. The letter, standing alone, was clearly insufficient as a basis for dismissal of petitioner's action where such a step would, in all likelihood, result in petitioner's execution. The court proposed to order the issuance of a writ of habeas corpus ad testificandum for petitioner to appear before the court on Tuesday morning, June 10, 1980. At that time the court proposed to address the petitioner personally and in open court, in a manner analogous to that required for acceptance of a plea of guilty under rule 11 of the Federal Rules of Criminal Procedure. After much reflection over the weekend, the court concluded that a procedure which would be sufficient for a finding that a plea

of guilty to premeditated murder was freely and knowingly entered into would lend itself well to the court's determination of whether Jack Howard Potts understood the consequences of his request, whether he was acting freely, and whether he genuinely desired to withdraw his action. The court proposed then to propound a series of questions to Mr. Potts and elicit a narrative response from him in order to ensure that he was competent and understood fully the finality of a decision to withdraw his petitions. All counsel concurred in the court's approach.

Although the court had found only six days before that there was no evidence even raising the issue of petitioner's competence to make a knowing and rational decision, the court also proposed that a court-appointed psychiatrist be present at the hearing for the purpose of rendering his opinion as to Mr. Potts' competency at the time of the hearing. Counsel also agreed with the court's proposal in that regard. The assistant Attorney General agreed that the state would bear that expense. The court contacted Dr. William S. Davis, who agreed to be present at such a hearing. Dr. Davis was selected as he had testified before the court on several prior occasions, and the court recalled that he was extremely well qualified as an expert in psychiatry. Other than having heard him testify, the court had no previous contact with Dr. Davis. Having received the endorsement of counsel on the procedure proposed, the court directed that Mr. Potts be brought to Atlanta for a hearing to commence at 11:00 a. m. on the following day. Because Mr. Potts had expressed in his letter that he would thereafter refuse the help of Millard Farmer and Andrea Young and desired not to talk with them further, Mr. Farmer and

---

**5.** A representative of petitioner's attorneys notified the court on Monday morning that they were aware of the letter sent to the court by their client. It was also represented that petitioner's attorneys had spent a large portion of the weekend attempting to convince him to continue with the habeas corpus actions and their representation of him. Mr. Farmer confirmed that he and his associates had spent many hours with Mr. Potts over the weekend and were continuing to explore other avenues in order to persuade him not to abandon these petitions. Because counsel for petitioner had knowledge of petitioner's letter asking that his petitions be withdrawn, the court, in the interest of equal treatment, apprised the Attorney General's office of the situation.

Miss Young as well as Mr. Nursey agreed that they should not act as counsel at the hearing but that the court should conduct the proceedings.

At 11:00 a. m. on June 10, 1980, the court commenced the hearing by advising petitioner that his attorneys of record had not been relieved by the court and that he had a right to be represented at the hearing by counsel of record or another attorney. Petitioner indicated that he did not desire his attorneys of record or any other attorney to represent him. Mr. Potts then took the witness stand and was sworn. The court began by reading to Mr. Potts its order entered June 9, 1980, scheduling the hearing and directing that a writ of habeas corpus ad testificandum issue in order to ensure that he knew the purpose of the hearing. Mr. Potts then confirmed that he had written a letter to the court; the court then read the letter it had received. Petitioner confirmed that the letter was written as received by the court. The court asked Mr. Potts if he understood the consequences of his requests and whether he persisted in those requests. Upon receiving an affirmative response, the court asked Mr. Potts why he persisted in his request to withdraw his habeas corpus petitions. Mr. Potts responded, stating,

> I was tried by a jury of twelve men and women. I've been found guilty of murder, a murder I committed. I could argue the constitutional laws that may have been overlooked or misused or whatever. But I see no sense in going along further and further, year after year, and probably end up dying in the electric chair anyway. I did not want to change my mind this past Thursday but as I said in the letter, it would have been very hard on my brother to see me die and thinking he could have done something else for me. So, now that he can leave it at that, you know, he did what he could

do, and now he will be satisfied, I hope he can live with that.[6]

The court then indicated to Mr. Potts that it had viewed a videotape of a news conference held by him the previous week and asked Mr. Potts if he remembered that and whether his feelings were the same. Mr. Potts indicated only that he was now expressing his thoughts in a different way. He stated that his life had changed over the last few years, that he had asked God to forgive him, that he knew he was forgiven, and that he no longer had to answer to anyone.

The court next asked petitioner if he was in any way threatened or coerced to withdraw his action. Mr. Potts stated that no one had talked to him about withdrawing the petitions and that he had made the decision on his own. The court continued its inquiry, asking petitioner if force had been used against him or if his life had been made such that continued existence would be difficult. Petitioner again indicated that the decision was his. Upon questioning, petitioner indicated that he was not under any type of medication and had not been for several days.

Petitioner was then asked if he realized that if he withdrew the petitions, he would be immediately resentenced and that sentence would be imposed within ten to twenty days of the date of resentencing. Mr. Potts answered in the affirmative.

The court elicited a narrative response from petitioner concerning the history of his criminal convictions. Mr. Potts demonstrated a lucid recollection of the trial proceedings, his attorneys, the time periods involved, and the habeas corpus proceedings in the state courts. He answered the questions propounded to him candidly, openly, and without hesitation. He appeared reasonable and rational at all times and knowledgeable about prior court proceedings.[7]

---

**6.** The court had previously warned Mr. Potts that he retained his rights under the fifth amendment to the Constitution and that he did not have to make any statements which might tend to incriminate him.

**7.** Mr. Potts indicated that his direct appeals were taken before the Supreme Court of the United States on an application for`a writ of certiorari. Counsel informed the court that such an application was not·properly made. The court later informed petitioner that it ap-

Mr. Potts indicated that he had read the petitions filed by his attorneys and was familiar with the grounds raised. Mr. Potts then stated that he had decided sometime in November that he would seek no further judicial review. He indicated that many persons, both attorneys and non-attorneys, had attempted to convince him to appeal, that he had been harassed, and that although he understood people did not want him to die, he wished they would leave him in peace.

The court then advised the petitioner that the action he was taking would amount to an abandonment of claims in the federal courts of certain constitutional violations and that a dismissal of these petitions would be an abandonment of the last available avenue of attack of the convictions and sentences of death. Mr. Potts responded, "I am well aware of that." He also indicated that he had no questions concerning the petitions or the effect of the withdrawal or abandonment of the petitions. The court asked Mr. Potts once more whether it was still his desire to dismiss Millard Farmer, Andrea Young, and Joe Nursey as counsel in these actions and withdraw these habeas corpus petitions. The court then stated,

> You realize that if I dismiss those then you have nothing from which to appeal to the Court of Appeals for the Fifth Circuit or the United States Supreme Court? Do you realize that the consequences of that would be that you would be remanded to the state prison for resentencing by the two superior courts involved?

Mr. Potts responded that he understood. The court then asked Mr. Farmer if he had any suggestions for further questioning. At Mr. Farmer's request, the court again informed Mr. Potts that he could talk to his attorneys of record or another attorney and asked Mr. Potts if he desired to talk with any of his family members. Mr. Potts stated that nothing further needed to be done prior to the court's decision. The attorneys for the state had no additional suggestions.

The court then requested that Dr. Davis take the stand. The court inquired whether Dr. Davis had observed Mr. Potts for a sufficient period of time upon which to base an opinion as to whether he was competent to make a knowing and intelligent decision on that day. Dr. Davis stated that he had had a sufficient opportunity to observe petitioner and that it was his professional opinion that petitioner understood the nature of the proceedings and the consequences of his decision. Dr. Davis stated that he saw nothing at all which would warrant further inquiry into the subject matter of petitioner's competency at that time.

The court then took a fifteen minute recess before ruling. During that recess Mr. Farmer suggested two additional subjects of inquiry to the court. In order to probe every possible avenue to ensure that Mr. Potts was in fact freely and voluntarily making a knowing decision, the court, upon reconvening the hearing, addressed the subjects of Mr. Farmer's concern to petitioner. The court first asked petitioner if the destruction of some of his personal religious objects at the Georgia State Prison or any treatment he had received at that institution after the filing of these petitions had a bearing on or contributed to his determination to withdraw the petitions. Mr. Potts stated that those factors did not influence his decision. The court then asked petitioner if he had told anyone that the reason he was abandoning these cases was because of actions taken against him by prison personnel. He stated he had not. Finally, the court stated that it appeared that his direct appeal was not taken before the Supreme Court of the United States as petitioner had earlier stated. Petitioner stated that it did not make any difference at all as far as his present decision was concerned.

After hearing Mr. Potts testify, the court found, as it did in the earlier proceeding, that he was fully competent to make the decision to abandon further legal proceedings. For that reason the court granted petitioner's request that counsel be relieved

peared that the Supreme Court had not reviewed his case. Overall, however, petitioner's

understanding of the processes was detailed and complete.

and directed that their names be stricken as counsel of record. The court then, at petitioner's request, dissolved the stay of execution entered June 4, 1980. As petitioner's requests are clear and are not the product of mental incompetency or coercion, the court will grant them. Accordingly, the petitions for writ of habeas corpus in the captioned cases are hereby dismissed.

IT IS SO ORDERED.

## APPENDIX A

Dear Judge O'Kelly

Sir, i wrote a note to you requesting to appeal and you granted a stay, at the time i asked for the new appeals i was with my brother, the only reason i asked for the appeal was to satisfy my brother who i love very much. Judge, i had no idea the stay would be granted, i knew you had refused a last friend appeal, so i truly thought that by writing the note in my brother presence the only thing it would accomplish would be to set his mind at ease, so he (my brother) could know with out a doubt he had done all he could do for me. Judge O'Kelly i am asking you to let me (if it my right) with draw the appeal. I realize Millard Farmer will only continue to use me and my situation if you fail to help me now. I beg of you to please let me with draw this appeal as quickly as possible!

RECEIVED IN CHAMBERS

JUN 6 1980

Judge William C. O'Kelley

2) Let me get a date set immediately and most of all let me die while in a state of grace! And could you issue an order that i refuse to see any reporters or news people, Judge O'Kelly i am giving this letter to my mother who will forward it to you today 6/6/80. I assure you Judge i am sound of mind and body, but i must be able to withdraw the appeal and i do now, as of today refuse the help of Millard Farmer and Andrea Young. and i refuse to speak with them. God Bless you Judge for your kind and considerate cooperation.

Jack H Potts
69124 - 4TH Floor
Reidsville, Ga.

6/6/80
June 6, 1980

WITNESSED:
Mrs. Carolyn Potts (Mother) June 6, 1980

① No reporters to be let in to Reidsville to see me.

② No moving me back and forth from Reidsville Prison to Jackson Prison

③ An immediate date to be set so the circus atmosphere will not have the chance to begin.

④. PLEASE accept my apilogy for having caused you problems in this, Judge.

[5] Every thing is prepared here at Reidsville for an execution if an immediate date is set.

Jack N Potts
6/6/80