32150. PEEK v. THE STATE.

M̲arshall, Justice.
The appellant was convicted of two counts of murder and one count of kidnapping in the Superior Court of Greene County. He received a sentence of death on each count. His case is here on direct appeal and for mandatory review of the death sentences imposed.

I. Summary of the Evidence.

The state presented evidence at trial from which the jury was authorized to find the following:

On the night of June 5, 1976, Grady Peek, Jr. (murder victim), Pearlie Mae Lawrence (kidnapping victim), and appellant were at the White Plains Club in Siloam, Georgia. They returned from the club in Grady's car to the home of appellant's sister, Barbara Ann Peek. The appellant went into the house while Grady and Pearlie Mae remained in the car and "had sex." Afterward, Grady returned to the house leaving Pearlie Mae in the car. Appellant went back outside to the car and climbed into the back seat with Pearlie Mae. He told her that "it's my turn now" and then attempted to rape her. Grady came out of the house and told appellant to leave her alone. The appellant complied and returned to the house, where he stayed for about five minutes.

The appellant then came back outside and called for Grady. Grady went back behind the car toward the corner of the house. Pearlie Mae heard a loud sound, "[l]ike

cutting wood with an axe." She got out of the car and went behind it where she found Grady lying on the ground. The appellant was standing over Grady poised to hit him again. However, when he saw Pearlie Mae, he threw down the instrument he had been using to beat Grady and chased Pearlie Mae and caught her. Appellant then dragged Grady's body to the car and put it in the back seat. He forced Pearlie Mae into the car with him and drove off. After driving a short distance, he drove the car into a ditch. He then raped Pearlie Mae.

After raping Pearlie Mae, appellant got out of the car and found James Jones behind the car on his knees. James Jones, who was staying at Barbara Peek's house, had been awakened by the sound of Pearlie Mae's hollering and had gone outside to investigate. When appellant found James kneeling next to the car, he reached inside the car and got the stick he had been beating Grady with and began to beat James. After James succumbed to the beating and fell to the ground, appellant hit Pearlie Mae on the head with the stick.

Appellant then went back to the Peek house, got the keys to James' car, and drove it back to Grady's car. He put James' body inside the car and Grady's body and Pearlie Mae in the trunk.

Appellant returned to the Peek residence and told Barbara that someone had "hurt" James. Appellant, Barbara Peek, and Paul Billy Ward, Jr., who was also staying at the Peek residence, went to the house of James Jones' parents. The police were then summoned.

Appellant, Barbara Peek, and James Jones' parents went to where appellant had parked Grady's car. Pearlie Mae was found inside the trunk. She was wearing only a blouse. James' body was found in the back seat of the car and Grady's body was found inside the trunk. The two of them were dead.

Pearlie Mae told the police that appellant had killed both Grady Peek and James Jones. After being advised of his rights, appellant gave a statement to the police in which he admitted beating Grady Peek and James Jones to death, but alleged that he was trying to defend himself.

Before trial appellant was sent to Central State Hospital to undergo a series of mental examinations. He

escaped from the hospital but was later recaptured. After appellant was recaptured, at his own request he gave a second statement to the police denying any involvement in the murders. He stated that Paul Billy Ward had killed Grady by hitting him with a baseball bat and that James Jones had been killed by being beaten with a baseball bat by Paul Billy Ward and stabbed in the back by Barbara Peek. However, autopsies performed on both murder victims indicated that neither of them was killed by a baseball bat or a knife.

Appellant took the witness stand at trial and testified in his own behalf. He again denied any involvement in the murders, but he did testify that he had helped move the body of James Jones after Jones had been killed.

## II. Enumerations of Error.

(1) Enumeration of error 1 contends that the trial court erred in admitting into evidence the pre-trial statements of appellant given to the law enforcement officials investigating the case. Appellant argues that these statements were given involuntarily and without an understanding of the Miranda warnings and were induced by fear of injury as well as hope of benefit.

The law enforcement officials to whom the statements were made testified that appellant was informed of his constitutional rights before making each statement and that he indicated that he understood them. Appellant testified that on certain occasions he was given his Miranda warnings but he testified that on other occasions either the warnings were not given to him or they were read too fast or he did not understand his rights, specifically his right to have an attorney present.

Appellant testified that before giving one of the statements to the sheriff, the sheriff had shown the appellant his pistol and intimated that he did not want any trouble from appellant. Appellant also testified that the sheriff told him that if he, the appellant, would tell the truth he would only get seven years in prison. The sheriff denied these charges by appellant, however.

The trial judge held a Jackson v. Denno, hearing out of the presence of the jury and determined that the statements were made by appellant freely and

voluntarily after he had been apprised of his constitutional rights. Accordingly, the trial judge ruled that the pre-trial statements made by appellant were admissible in evidence.

In *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974), this court stated that, "[f]actual and credibility determinations of this sort made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous. See Lego v. Twomey, 404 U. S. 477 (92 SC 619, 30 LE2d 618) (1972), and United States v. Watson, 469 F2d 362 (5th Cir. 1972)."

Although Miranda establishes that the accused has a constitutional right to the presence of an attorney during an in-custody interrogation, that right has been found to have been waived where the accused is informed of his rights, understands them, and then proceeds voluntarily to answer questions in the absence of counsel. See, e.g., Blackmon v. Blackledge, 541 F2d 1070 (1976 4th Cir.); United States v. James, 528 F2d 999, 1019 (1976 5th Cir.); United States v. Marchildon, 519 F2d 337 (1975 8th Cir.); United States v. Boston, 508 F2d 1171 (1974 2d Cir.). We do not construe the decision of the United States Supreme Court in Brewer v. Williams, 430 U. S. — (97 SC 1232, 51 LE2d 424) (1977) as overruling the previously cited federal appellate court decisions. The record in the case sub judice shows that each of the pre-trial statements appellant gave police was made after appellant had been advised of his right to have an attorney present and that he had knowingly and voluntarily relinquished that right.

Upon a review of the record we hold that the determination of the trial judge in favor of admissibility was not clearly erroneous under the facts of this case.

(2) Enumeration of error 2 contends that the trial court erred in admitting into evidence various items, e.g., wood scrapings, metal dishpan, tank top shirt, trousers, and quilt (all of which were bloodstained), found in the home of appellant's sister, Barbara Peek. Appellant argues that these evidentiary items were obtained by an illegal search and seizure without a warrant and without

appellant's consent.

The trial judge admitted the complained-of items into evidence after finding that Barbara Peek had consented to the search.

At the pre-trial suppression hearing, as well as the trial itself, it was established that appellant lived with his sister in one bedroom of a house which she rented from another person. The police officer conducting the search testified that before searching the house he had obtained permission from appellant's sister, who stated to him that it was her house.

The only item seized from appellant's bedroom which was admitted into evidence was the quilt lying on the bed in that room. Testimony at trial indicated that it was necessary to go through this room to gain entrance to other areas of the house.

"[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U. S. 164, 171 (194 SC 988, 39 LE2d 242) (1974).

Certainly appellant's sister, as the lessee of the house in which he resided, possessed sufficient authority over the common areas of that house to consent to a search thereof. The question of her authority to consent to a search of appellant's bedroom is closer, but under the facts of this case the court need not embroil itself in the difficult task of attempting to determine what areas of the bedroom could be searched through the consent of appellant's sister and what areas could not. As we have stated, it was necessary to pass through the bedroom to gain entrance to other areas of the house, and the quilt which was seized from the bedroom was found on the bed in plain view. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U. S. 234, 236 (88 SC 992, 19 LE2d 1067) (1968).

(3) Enumeration of error 3 is wholly without merit.

The misspelling of the word blunt in the counts of the indictment charging the appellant with having committed the murders with a "blount" instrument did not result in a fatal variance between the allegata and probata. See *DePalma v. State,* 225 Ga. 465 (169 SE2d 801) (1969). We note, also, that these allegations in the indictment were borne out by evidence introduced by the state at the trial consisting of a tire tool and a stick found with bloodstains on them at the scenes of the crimes.

(4) Enumeration of error 4 contends that the trial court erred in overruling appellant's motion for a directed verdict of acquittal on Count 1 of the indictment alleging kidnapping with bodily injury in that the evidence offered by the state did not show any injury to the victim.

At the outset appellant contends that the kidnapping statute, Code Ann. § 26-1311 (Ga. L. 1968, pp. 1249, 1282), does not define "bodily injury" and that this renders that portion of the statute punishing kidnapping with bodily injury unconstitutionally vague. The constitutionality of the kidnapping statute was upheld against a similar attack in *Coker v. State,* 234 Ga. 555, 558 (216 SE2d 782) (1975). In addition, it does not appear that appellant raised this argument in the trial court; nor did he file a demurrer to the indictment on this ground.

The state argues that the evidence at trial showed that the victim was raped by appellant and beaten on the head with a stick by him and, therefore, bodily injury to the victim has been proven.

The rape of the victim of a kidnapping is sufficient evidence of bodily injury to authorize the conviction of the accused for kidnapping with bodily injury to the victim. See *Allen v. State,* 233 Ga. 200 (3) (210 SE2d 680) (1974); *Henderson v. State,* 227 Ga. 68 (4) (179 SE2d 76) (1970).

Without deciding whether there was sufficient evidence to sustain an independent conviction for rape, we hold that there was sufficient evidence introduced by the state at trial to authorize the jury in convicting the appellant of kidnapping with bodily injury to the victim. The appellate court considers only the sufficiency of the

evidence and not its weight. See *Bailey v. State,* 238 Ga. 195 (232 SE2d 68) (1977).

The trial court did not err in overruling appellant's motion for a directed verdict of acquittal on the kidnapping with bodily injury charge.

(5) Enumeration of error 5 contends that the kidnapping statute, Code Ann. § 26-1311 (Ga. L. 1968, pp. 1249, 1282) is unconstitutional insofar as it allows kidnapping with bodily injury to the victim to be punished by death. This enumeration of error has merit, although not for the reasons assigned by the appellant.

In Coker v. Georgia, 433 U. S. — (97 SC 2861, 53 LE2d 982) (1977), the United States Supreme Court held that the death penalty can no longer be imposed for rape under the Eighth Amendment to the U. S. Constitution. In *Collins v. State,* 239 Ga. 400 (1977), this court applied the rationale of Coker to armed robbery and kidnapping, holding that the death penalty may no longer be imposed for these crimes either.

Accordingly, the death sentence received by appellant under Count 1 of the indictment for kidnapping with bodily injury to the victim must be set aside and remanded to the trial court with the direction that appellant be resentenced to life imprisonment, the only permissible punishment remaining under the kidnapping statute.

(6) Enumeration of error 6 contends that the trial court erred in sentencing appellant to death on each of the three counts set forth in the indictment in that the capital offense committed constitutes the aggravating circumstance for another capital offense.

We do not consider the death sentence imposed under Count 1 for kidnapping with bodily injury, as that sentence has been set aside. Nor do we now consider whether the statutory aggravating circumstances found by the jury are supported by the evidence; that determination will be made in the sentence review.

Under Count 2, the jury found that the murder of James Jones was committed while appellant was engaged in the commission of another capital felony, to wit, kidnapping, and recommended that the death penalty be imposed. Under Count 3, the jury found that the murder of

Grady Peek, Jr., was committed while appellant was engaged in the commission of another capital felony, to wit, murder, and recommended that the death penalty be imposed.

In support of the argument that the death penalty cannot be given for a capital offense which has served as the aggravating circumstance for another capital offense for which the death penalty has also been given, appellant relies upon Division 6 of *Gregg v. State,* 233 Ga. 117, 126-128 (210 SE2d 659) (1974). Gregg was convicted of two counts of armed robbery and two counts of murder. He received the death penalty on all four counts. This court set aside the two sentences of death for the offenses of armed robbery for the reason that the death penalty for armed robbery is excessive. Code Ann. § 27-2537 (c) (3). Additionally, the court held that, "[s]ince the armed robberies were held to be aggravating circumstances authorizing the death penalties as to the murders, the murders cannot then be used in aggravation of the two armed robberies." Id. at p. 127.

However, as *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975) shows, *Gregg* did not hold that an offense for which the death penalty has been given cannot be used as an aggravating circumstance authorizing imposition of the death penalty for another offense. Jarrell received the death penalty for murder, kidnapping, and armed robbery. This court held that armed robbery could serve as the aggravating circumstance for the death sentence as to murder and the murder could serve as the aggravating circumstance for the death sentence as to kidnapping.

Assuming that the jury's findings in this regard are otherwise factually and legally sustainable, the murder of James Jones, for which appellant received the death penalty (the aggravating circumstances being kidnapping), may also serve as the aggravating circumstance authorizing imposition of the death penalty as to the murder of Grady Peek, Jr.

(7) Enumeration of error 7 contends that "the trial court erred in submitting the question of death or life imprisonment to the jury after the verdict of guilty was returned in that in order to comply with the provisions of

(Code Ann. § 27-2534.1) the jury must find the statutory aggravating circumstances beyond a reasonable doubt thus requiring the jury to make a factual determination based on identical evidence and identical facts as considered in the initial jury determination on the question of guilt or innocence and therefore constitutes double jeopardy."

The constitutionality of Georgia's two-step procedure for administering the death penalty was considered by the United States Supreme Court and upheld in Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 50 LE2d 30) (1976).

The double-jeopardy clause is intended to prevent successive prosecutions or multiple punishments for the same crime. See United States v. Wilson, 420 U. S. 332 (95 SC 1013, 43 LE2d 232) (1975). That constitutional provision does not prohibit the bifurcated trial of a case in which the death penalty may be imposed for the reason that although such a trial is divided into two stages, it is but one trial. Cf. *Miller v. State,* 237 Ga. 557 (229 SE2d 376) (1976).

(8) The eighth and final enumeration of error, which contends that the trial court erred in denying appellant's motion for new trial on the general grounds, is without merit.

"In passing on the general grounds of a motion for new trial, this court passes not on the weight but on the sufficiency of the evidence. It is our duty to determine whether the verdict as rendered can be sustained under any reasonable view taken of the proofs submitted to the jury." *Ingram v. State,* 204 Ga. 164, 184 (48 SE2d 891) (1948).

### III. Sentence Review.

In the review of the death sentences imposed, we must consider three questions:

(1) "Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." Code Ann. § 27-2537 (c) (1). After a review of the record, we find that the sentences of death were not imposed under any of these factors.

(2) "Whether, in cases other than treason or aircraft hijacking, the evidence supports the jury's or judge's find-

ing of a statutory aggravating circumstance as enumerated in section 27-2534.1 (b), . . ." Code Ann. § 27-2537 (c) (2).

(a) The death sentence was imposed upon appellant for the murder of Grady Peek, Jr., pursuant to the jury's recommendation after the jury found that the offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit, murder. Code Ann. § 27-2534.1 (b) (2). The jury's finding that the murder of Grady Peek, Jr., was committed while the appellant was engaged in the commission of the murder of James Jones is supported by the evidence. Although the appellant may not have anticipated that he would murder James Jones at the time that he was bludgeoning to death his (appellant's) brother, Grady Peek, Jr., the evidence fully authorized the jury in finding that the first murder was committed in order to accomplish the kidnapping-rape and the second murder committed in order to avoid apprehension. It also appears that these crimes were committed by appellant in a relatively short period of time in what can be fairly viewed as one continuous course of criminal conduct. Thus, under the facts of this case, the jury was authorized in finding that the first murder was committed in the course of the second murder.

(b) The death sentence was imposed upon appellant for the murder of James Jones by the jury after the jury found that this murder was committed while the offender was engaged in the commission of another capital felony, to wit, kidnapping with bodily injury to the victim. Code Ann. § 27-2534.1 (b) (2). The evidence in this case supports the jury's finding of this statutory aggravating circumstance.

However, under the decision of the U. S. Supreme Court in Coker, supra, and our decision in *Collins,* supra, we must determine whether kidnapping is still to be considered a "capital felony" under Code Ann. § 27-2534.1 (b) (2).

This Code section contains the second statutory aggravating circumstance which authorizes imposition of the death penalty if: "The offense of murder, rape, armed robbery, or kidnapping was committed while the offender

was engaged in the commission of another capital felony, or aggravated battery, or the offense of murder was committed while the offender was engaged in the commission of burglary or arson in the first degree."

We construe "capital felony" as that term is used in § 27-2534.1 (b) (2) in a generic sense to include those felonies which were capital crimes in Georgia at the time this section of our death penalty statute was enacted.

*Collins v. State* held that under Coker the death penalty could no longer be given for rape, armed robbery and kidnapping and, therefore, these offenses were no longer capital felonies *for appellate jurisdictional purposes. Collins,* thus, left open the question of whether such offenses could be used as capital felonies for the purpose of applying this aggravating circumstance provision of the Code.

In *Gregg v. State,* 233 Ga. 117, supra, this court held that under the statute (Code Ann. § 27-2537 (c) (3)), the death penalty could not be imposed for armed robbery in that the death penalty was rarely imposed for this offense and, therefore, the sentence of death was excessive or disproportionate to the penalty imposed in similar cases. Since *Gregg,* this court has continued to disapprove the death penalty for armed robbery. See *Jarrell v. State,* 234 Ga. 410, 424 (216 SE2d 258) (1975); *Floyd v. State,* 233 Ga. 280, 285 (210 SE2d 810) (1974). However, we have continued to recognize armed robbery as a capital offense for the purpose of applying the aggravating circumstance provision of section 27-2534.1 (b) (2). See, e.g., *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975).

This practice of recognizing armed robbery as a capital offense under the aggravating-circumstance provision of the Code, notwithstanding the fact that the death penalty can no longer be given for armed robbery, was recognized by the U. S. Supreme Court in Coker and not disapproved. See Coker, supra, 53 LE2d at 994, n. 15.

(3) "Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Code Ann.

§ 27-2537 (c) (3).

The appellant's sentence to death for these murders is not excessive or disproportionate to the penalty imposed in similar cases considering both the crimes and the defendant.

In reviewing the death penalty in this case, we have considered the murder cases appealed to this court since January 1, 1970, in which death or a life sentence was imposed and we find the similar cases listed in the appendix support affirmance of the death penalty.

*Judgment affirmed in part and reversed in part with direction. All the Justices concur.*

ARGUED APRIL 12, 1977 — DECIDED
SEPTEMBER 6, 1977.

*W. Seaborn Ashley, Jr.,* for appellant.

*Joseph H. Briley, District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976); *Banks v. State,* 237 Ga. 325 (227 SE2d 380) (1976); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Gaddis v. State,* 239 Ga. 238 (236 SE2d 594) (1977).