39345. ROMINE v. THE STATE.

CLARKE, Justice.

Appellant, Larry Romine, was indicted in Pickens County for the murder of his parents and the armed robbery of his mother. His case was tried under the Unified Appeal Procedure. The jury convicted him on all three counts and recommended that he be sen-

tenced to death.

1. Appellant and his wife separated a few weeks prior to the murders. He spent most nights thereafter with Ginger McEntire. In this and other respects, appellant's lifestyle met with parental disapproval. After an argument with his father the weekend before the murders, appellant told Ginger not to worry about it; it would not go on much longer.

He and Ginger met Thursday, March 19, 1981, shortly after 6:30 p.m., and spent that night in a motel. The next morning, appellant told Ginger, "I bet you mama and daddy didn't work today."

They did not. When appellant's mother, Avilee, failed to appear Friday morning, members of her carpool called her home. There was no answer. They contacted Reverend McClure, who lived nearby, and he entered the house through the open front door. Inside, he found the bodies of Avilee and appellant's father, Roy.

Roy, whose body lay in the kitchen, had been shot in the back. Avilee was in the bedroom, shot in the chest. Two .16 gauge shotgun waddings were recovered from the kitchen and bedroom. They were later identified as having been fired from a shotgun owned by Ginger McEntire.

Avilee's purse was missing, as was a paycheck she had received Thursday. On Monday, March 23, appellant was observed burning the contents of a box in a trash barrel. When law enforcement officers thereafter searched the trash barrel, they found a metal tool identical to one used by Avilee in her work, and a metal frame, rings and zipper that looked like the metal portions of her coin purse and pocket book. After appellant was arrested Tuesday, March 24, he asked his wife to retrieve a packet of papers from his car. She did, and turned it over to the GBI. The packet contained a $500 certificate of deposit payable to Avilee, her paycheck of March 19, her savings passbook, and various title and insurance papers bearing her name or Roy's.

In a statement given to law enforcement officers Tuesday evening, appellant admitted borrowing Ginger's shotgun, without her knowledge, on Thursday afternoon. He said that when he got home, he took two hits of LSD and loaded the gun. Then he walked the quarter mile from his house to his parents' house. No one was home and he used his key to enter. Hearing his mother drive up, he waited for her to enter the bedroom, and then he shot her. He went into the living room and waited on the couch. The next thing appellant remembered was hearing his father drive up. (Other evidence presented at trial indicated that approximately two hours had elapsed.) Roy entered the house and went to the kitchen, carrying several sacks of groceries. Appellant shot him and left.

Appellant does not challenge the sufficiency of the evidence

with regard to his convictions. However, we have reviewed the evidence pursuant to Rule IV (B)(2) of the Unified Appeal Procedure and we conclude that the evidence supports appellant's convictions for armed robbery and two counts of murder. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The "first proceeding," contemplated by Rule II (A) of the Unified Appeal Procedure, was conducted June 19, 1981. Motion hearings were thereafter conducted on August 5, September 25 and October 5, 1981. See Rule II (B) of the Unified Appeal Procedure. At the October 5 hearing, appellant's trial, originally scheduled for October, was continued until the March 1982, term of court.

On February 10, 1982, appellant filed a motion to recuse Judge Frank C. Mills III, who had presided over all of the proceedings in the case. Appellant alleged in his motion that prior to being named to the bench in February of 1981, Judge Mills had been the district attorney for seven years; that because of his prosecutorial experience, Judge Mills was biased against the appellant; and that his bias was demonstrated by his conduct in handling the case. In a supporting affidavit appellant alleged:

"Specifically, in the pre-arraignment hearing on June 19, 1981, during the testimony of Ms. Linda Hames, the transcript shows that after five brief questions by the District Attorney, Judge Mills proceeded to ask eighteen questions.

"Further, in the pre-trial hearing held August 5, 1981, Judge Mills, after the District Attorney had completed his questions of [defense witness] Millard Farmer, engaged the witness in extensive questioning and argument as to the matters at issue."

The trial court denied appellant's motion to recuse. Appellant contends in his sixth enumeration that this denial was error.

In State v. Fleming, 245 Ga. 700 (1) (267 SE2d 207) (1980), this court elected to follow the federal rule that "when a trial judge in a case pending in that court is presented with a motion to recuse accompanied by an affidavit, the judge's duty will be limited to passing upon the legal sufficiency of the affidavit, and if, assuming all the facts alleged in the affidavit to be true, recusal would be warranted, then another judge must be assigned to hear the motion to recuse." Id. at 702. In Hunnicutt v. Hunnicutt, 248 Ga. 516 (283 SE2d 891) (1981), this court further held that the motion must not only be legally sufficient, but timely, i.e., made "as soon as the facts demonstrating the basis for disqualification become known." Id. at 518.

All the facts alleged as a basis for the disqualification of Judge Mills were known prior to August 5, 1981. Appellant filed his motion six months later. Appellant's motion was untimely and the trial court

did not err in denying the motion to recuse or in denying appellant's request to allow another judge to hear the motion.

3. In his ninth enumeration of error, appellant contends the Unified Appeal Procedure is unconstitutional. We do not agree with appellant's contention that the Unified Appeal Procedure "forces the trial court out of its traditional role of neutral overseer, aligning it with the prosecution." His remaining contentions have been decided adversely to him in *Brown v. State,* 250 Ga. 66 (3) (295 SE2d 727) (1982) and *Sliger v. State,* 248 Ga. 316 (282 SE2d 291) (1981).

4. The trial court did not err by failing to grant appellant's motion for change of venue. Of the 66 jurors impaneled, only 11 were excused for bias or prejudice. These 11 jurors constituted 16.7% of the entire panel. This percentage corroborates the absence of such prejudicial publicity as would require the grant of a motion for new trial. *Messer v. State,* 247 Ga. 316 (4) (276 SE2d 15) (1981). Appellant's eighth enumeration of error is meritless.

5. On July 21, 1981, appellant filed a motion in which he sought discovery of relationships or other ties to prospective jurors by law enforcement officers, witnesses and bailiffs. The motion was granted. The court's order of February 12, 1982, contemplated that interrogatories be submitted to the district attorney for dissemination by him to witnesses, bailiffs and law enforcement officers, and that the interrogatories be returned to the defense prior to voir dire.

A copy of the jury list was mailed to the appellant and his attorney on February 26, 1982. Appellant thereafter submitted his interrogatories to the district attorney. When the voir dire commenced the morning of March 29, the completed interrogatories had not yet been furnished to appellant because the district attorney had neglected to disseminate them to anyone. Appellant moved to continue the case so that the interrogatories could be furnished prior to voir dire. The motion was denied, but the trial court ordered that the interrogatories be completed and furnished to appellant prior to the selection of the jury.

At 8:45 p.m. on the 29th, 45 completed interrogatories were furnished to appellant. Appellant then made another motion for continuance so that he could have additional time to examine the interrogatories. This motion was denied. Voir dire continued the next day and the jury was selected March 31.

Appellant contends in his fifth enumeration of error that the trial court erred in denying his motions for continuance. We cannot agree.

The district attorney should have complied with the clear terms of the February 12 order. Nonetheless, his failure to do so was not

brought to the court's attention until immediately before the voir dire was scheduled to begin; the court thereafter did what it could to enforce compliance with its order, short of further delaying the case.

The information sought by appellant is ordinarily obtained from the voir dire of potential jurors. Appellant has failed to demonstrate that he relied to his detriment on an order that was discretionary, or that he was harmed by the belated compliance with the order. Motions for continuance are addressed to the sound discretion of the trial court. *Marshall v. State,* 239 Ga. 101 (1) (236 SE2d 58) (1977). We find no abuse of discretion here.

6. In his seventh enumeration of error, appellant contends the fast pace of the trial denied him effective assistance of counsel.

The trial began with voir dire Monday morning and ended Saturday evening. Court was in session, according to appellant, until 8:30 p.m. Monday, 9:00 p.m. Tuesday, 6:30 p.m. Wednesday, 7:00 p.m. Thursday, 10:00 p.m. Friday and 5:00 p.m. Saturday.

We note that appellant's attorney was appointed April 13, 1981, almost a year prior to the trial. His investigation was aided by a private investigator retained with funds furnished by the trial court. Counsel was assisted throughout the trial by his associate.

Except for matters discussed in Division 11, post, appellant has not shown in what way his attorney would have been more effective had the case been tried at a slower pace. As to the guilt phase of the trial, our review of the record convinces us that appellant had counsel reasonably likely to render and rendering reasonably effective assistance. *Pitts v. Glass,* 231 Ga. 638 (203 SE2d 515) (1974).

## Sentence Review

7. In our review of the sentence, we address first a matter not raised on appeal. The jury's written sentence verdict as to Count 1 (the murder of Avilee Romine) recited, as a statutory aggravating circumstance: "Armed robbery of said Avilee Romine." As to Count 3 (the murder of Roy Lee Romine), the verdict recited, as a statutory aggravating circumstance: "Murder of Avilee Romine."

As noted by the trial court, "The verdict as prepared does not specify the statutory aggravating circumstances in the precise language as set forth in the charge." The charge had tracked the statutory language of OCGA § 17-10-30 (b) (2) (Code Ann. § 27-2534.1).[1]

---

[1] The court charged: "... as to Count One, the offense of murder of Avilee Romine was committed while the offender was engaged in the commission of an additional capital felony, that being the armed robbery of said Avilee Romine ..." "As to Count

The court asked appellant's attorney, "Do you have any objection as [to] the form of the verdict and the manner in which it's written on the form, Mr. Thomas?" Counsel replied, "Not that I'm stating at this time, Your Honor, without waiving any." Nonetheless, at the district attorney's suggestion, the trial court dealt with the subject during the poll of the jury. The court asked each juror if the juror meant by his verdict that, as to Count 1, the jury found that the offense of murder of Avilee Romine was committed while the offender was engaged in the commission of the additional capital felony, the armed robbery of Avilee Romine; and that, as to Count 3, the jury found that the murder of Roy Lee Romine was committed while the offender was engaged in the commission of the additional capital felony, the murder of Avilee Romine. Each juror responded in the affirmative.

When a jury recommends a death sentence, it must designate in writing the aggravating circumstance or circumstances which it has found beyond a reasonable doubt. OCGA § 17-10-30 (c) (Code Ann. § 27-2534.1). This written finding should recite all the essential, pertinent elements of the statutory aggravating circumstances found by the jury. At a minimum, the jury's intent must be shown with sufficient clarity that this court can rationally review the jury's finding. Cf. Godfrey v. Georgia, 446 U. S. 420, 428 (100 SC 1759, 64 LE2d 398) (1980).

We need not decide whether the jury's written verdict, standing alone, was a sufficient expression of its finding. The poll of the jury clarified its written finding, and absent any objection to the form of the jury's verdict, we find no error in the court's failure to require the jury to amend its written verdict to reflect more precisely its intent. Cf. *Todhunter v. Price,* 248 Ga. 411 (1) (283 SE2d 864) (1981).

8. In his first enumeration of error, appellant contends that the statutory aggravating circumstances found by the jury may not stand, for several reasons.

First, he contends that as to Count 2, the death penalty for the murder of Roy Romine cannot be supported by the murder of Avilee Romine, because the crime and the supporting circumstance are the same capital felony, i.e., murder. Appellant contends that the supporting capital felony must be not only a different capital felony, but a different *kind* of capital felony, than the capital felony for which the death penalty is imposed. We cannot agree. As we have held in the

---

Three, . . . the offense of murder of Roy Lee Romine was committed while the offender was engaged in the commission of an additional [capital] felony, that being the murder of Avilee Romine." Transcript, Vol. XIV, pp. 2231-32; Record, p. 336.

past, OCGA § 17-10-30 (b) (2) (Code Ann. § 27-2534.1 (b) (2)) is applicable to multiple murders. *Gilreath v. State,* 247 Ga. 814 (16) (279 SE2d 650) (1981).

Second, appellant contends that since the two murders in this case were not simultaneous, one was not committed while the offender was engaged in the commission of the other. We do not agree that § (b) (2) requires simultaneity of action with regard to the two offenses. *Gilreath v. State,* supra; *Peek v. State,* 239 Ga. 422, 431 (238 SE2d 12) (1977). As in *Peek,* the murders in this case "were committed by appellant in a relatively short period of time in what can be fairly viewed as one continuous course of criminal conduct. Thus, under the facts of this case, the jury was authorized in finding that the first murder was committed in the course of the second murder." Ibid.

Finally, appellant contends the evidence is insufficient to show that the murder of Avilee was committed during the course of an armed robbery.

The evidence shows the following: Avilee was paid by check on the afternoon of the day of her death. Less than three hours later, she was murdered by her son. Within the next few days, Avilee's paycheck and other papers were found in appellant's possession and the remains of her pocketbook were found in a trash barrel in which appellant had burned the contents of a box. The evidence demonstrates that appellant, "with intent to commit theft, [took] property of another from the person or the immediate presence of another by use of an offensive weapon . . ." OCGA § 16-8-41 (a) (Code Ann. § 26-1902).

From the evidence, the jury was authorized to find appellant guilty of armed robbery, and to find that the armed robbery was a statutory aggravating circumstance supporting the death penalty for Avilee's murder, and this is so regardless of whether appellant's intent to take Avilee's pocketbook arose before or after he murdered her. *Young v. State,* 251 Ga. 153 (303 SE2d 431) (1983).

9. We find that the statutory aggravating circumstances found by the jury are supported by the evidence beyond a reasonable doubt. OCGA § 17-10-35 (c) (2) (Code Ann. § 27-2537); Jackson v. Virginia, supra.

10. In his fourth enumeration of error, appellant contends that the sentencing charge was inadequate.

(a) The court charged: "Ladies and gentlemen, you have found the Defendant Larry Romine guilty of the offenses of murder. It is now your duty to determine the penalty that shall be imposed as punishment for those offenses as prescribed by our law. In arriving at this determination, you are authorized to consider all of the evidence

received here in court as presented by the State and this Defendant throughout the entire trial. You are authorized also to consider all the facts and circumstances, if you find there to be any, in extenuation and mitigation of punishment presented by the Defendant and shown to you by the evidence in both phases of this trial."

In *Hawes v. State,* 240 Ga. 327 (9) at 334 (240 SE2d 833) (1977), we stated that the "failure to inform the jury that they were *authorized* to consider mitigating circumstances . . . was in contravention . . ." of the requirements of our death penalty law. (Emphasis supplied.) OCGA § 17-10-30 (b) (Code Ann. § 27-2534.1 (b)). The charge in this case was not subject to the defect discussed in *Hawes,* and there is no merit to appellant's contention that, under *Hawes,* the court should have used the word "required" instead of the word "authorized."

(b) The court charged: "Aggravating circumstances are those which increase the guilt of the Defendant or the enormity of the offense or . . . its injurious consequences. Mitigating circumstances are those which do not constitute a justification or excuse for the offense in question but which in all fairness and mercy may be considered as extenuating or reducing the degree of moral culpability or blame.

". . . [I]f you see fit . . . to recommend mercy for the Defendant then this recommendation is solely in your discretion and is not controlled by any rule of law. You may make such recommendation with or without reason. If this should be your finding, then the Court is required by law to sentence this Defendant Larry Romine to life imprisonment. In other words . . . if you find beyond a reasonable doubt that the State of Georgia has proved the existence of one or more of the aggravating circumstances given to you in this charge as to either or both counts, you nonetheless are not required to recommend that the Defendant Romine be put to death.

"You may, if you see fit, and this is a matter entirely in your discretion, provide for a life sentence for the accused Romine based upon any mitigating circumstances or reasons satisfactory to you or without reason if you see fit to do so.

"You may recommend life imprisonment even though you have found the aggravating circumstances given to you in this charge to have existed beyond a reasonable doubt."

The trial court made it clear to the jury that it could recommend a life sentence even if it found that the state had proven the existence of one or more statutory aggravating circumstances beyond a reasonable doubt. *Hawes v. State,* supra; *Fleming v. State,* 240 Ga. 142 (7) (240 SE2d 37) (1977).

The trial court did not err, as appellant contends, in failing to

specifically instruct the jury that "as to mitigating circumstances [the jury] could consider anything, without limitation or definition." The court's instruction conveyed to the jury that its authority to recommend mercy was unlimited and not circumscribed by the court's definition of mitigating circumstances.

(c) Appellant contends the court's charge was deficient because it did not expressly forbid the jury from considering pre-trial gossip and rumors. We note that appellant failed to request such a charge. Moreover, the court told the jury: "You are also authorized to consider all the facts and circumstances, if you find any, regarding the gravity and the seriousness of the offense and your knowledge of the personal background of this Defendant, *but only as shown to you by the evidence in both phases of this trial.*" (Emphasis supplied.) Appellant's contention is meritless.

(d) We cannot agree with appellant's contention that the court's charge was overly suggestive of aggravating circumstances. The court's charge fully and fairly explained aggravation, mitigation, the choice to be made between life and death, and the jury's responsibilities in that regard.

11. For reasons which follow, however, we find that we must set aside the sentences of death imposed in this case.

Appellant's grandfather, Ralph Romine, had been subpoenaed and had attended trial until Friday evening, when he left early because he felt ill. He was instructed to return the next morning. The jury returned its verdicts of guilty Friday night.

When the sentencing phase of the trial began Saturday morning, Ralph was absent. His absence was called to the court's attention by appellant's attorney, who asked for a continuance "for a period of time sufficient to allow us to determine the physical condition of Ralph Romine and secure his attendance at court." Asked for an offer of proof as to what Ralph would testify, appellant's attorney stated: ". . . Ralph Romine has come to my office on several occasions . . . [H]e did not want his grandson electrocuted . . . [H]e had very strong reservations about it. He tells me that the Lord has dealt with him in that matter and the taking of the life of his grandson will not bring back his son . . . He has expressed a tremendous desire to be able to tell the jury what his wishes are . . ."

The district attorney responded to this offer of proof with the suggestion that nothing that Ralph had to say would be admissible. The court asked appellant's attorney if there were other matters to which Ralph would testify. Counsel said there were, but he could not be more specific because Ralph had planned to formulate his testimony after hearing the evidence presented at trial. The court denied the continuance.

Immediately before appellant rested later that morning, after he had testified on his own behalf, appellant renewed his motion for continuance. The court asked, "[D]o you have any indication that it would be a short continuance?" Appellant's attorney answered, "I do not know, Your Honor."

The court then asked, "[D]o you have anything to add to your offer of proof, anything that would be admissible . . . [Y]ou haven't told me anything yet that he would say that would be admissible. Now, that's what I'm waiting to hear. You're saying that he would express his wishes that Mr. Romine not get the death penalty. That would not be admissible." When counsel was unable to supplement his offer of proof, his renewed motion for continuance was denied.

At the hearing on appellant's motion for new trial, the trial court explained its denial of the motion for continuance: "[T]he only thing that was offered in the nature of proof was that [Ralph] would testify that he was opposed to the death penalty for his grandson. And, therefore, *on that basis,* I denied your motion for continuance." (Emphasis supplied.)

Appellant contends the denial of his motion for continuance was error. We agree.

It is clear that the largest factor in the court's denial of continuance was the court's belief that Ralph's testimony would not have been admissible in mitigation. This court, however, has consistently refused to place unnecessary restrictions on the evidence that can be offered in mitigation at the sentencing phase of a death penalty case. See, e.g., *Brooks v. State,* 244 Ga. 574, 584 (261 SE2d 379) (1979); *Cobb v. State,* 244 Ga. 344 (28) (260 SE2d 60) (1979); *Spivey v. State,* 241 Ga. 477, 479 (246 SE2d 288) (1979); *Brown v. State,* 235 Ga. 644 (3) (220 SE2d 922) (1975). See also Lockett v. Ohio, 438 U. S. 586, 604 (98 SC 2954, 57 LE2d 973) (1978), which held that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (Emphasis in original, footnotes omitted.) In *Cofield v. State,* 247 Ga. 98 (7) (274 SE2d 530) (1981), we held that, whether or not Lockett v. Ohio, supra, required it, in Georgia, a mother's testimony that she loved her son and did not wish to see him executed was admissible in mitigation in a death penalty case.

Ralph's testimony that he did not wish to see his grandson die would have been admissible in mitigation and the trial court's opinion to the contrary was wrong. Moreover, Ralph's testimony would have been particularly significant because he was closely

related not only to the appellant but also to the victims; unlike the mother in *Cofield*, Ralph was not viewing the case solely from appellant's perspective, and his opinion might well have been given considerable importance by the jury.

The state contends, nonetheless, that the denial of continuance was not error because the appellant failed to show that Ralph's attendance could have been secured within a reasonable time. We agree that such a showing would be a normal prerequisite to relief. We are not prepared to hold that Ralph's testimony, although admissible, was so important that appellant was entitled to a continuance of indefinite duration. As applied to this case, however, the state's position presents several difficulties.

First, the basis of the court's denial of continuance was the court's mistaken belief that Ralph's testimony was inadmissible, rather than appellant's failure to demonstrate that only a short continuance would have been necessary.

Second, appellant had no reason to anticipate Ralph's absence until he failed to appear Saturday morning. Saturday was the last day of the trial, and appellant was forced to rest his case and to present his closing arguments prior to the luncheon recess. In these circumstances, if further efforts to secure Ralph's attendance were not mooted by the court's pronouncement that Ralph's testimony would be inadmissible, the court's denial of appellant's motion for a short continuance to ascertain the reason for Ralph's absence and to attempt to secure his presence or at least to determine how long he might be unavailable, denied appellant a reasonable opportunity to secure the attendance of his witness that morning or to establish to the court's satisfaction that the witness could be obtained within a reasonable period of time.

Finally, the record, as supplemented after trial by Ralph's testimony (see Rule IV (A) (5) (b) of the Unified Appeal Procedure), strongly suggests that Ralph could have come to court Saturday had he realized the importance of his testimony and the importance of testifying that day or not at all: Ralph testified that he was 72 years old and had a heart condition which rendered him unable to work. He had a prescription for NTG tablets that he took as needed for chest pain. He testified that he got "pained in my heart" Friday night of the trial. The next day he wanted to testify but was not able to. He admitted, however, that he did not consult a physician any time during the trial week. Nor did he find it necessary to take his medicine Friday night or Saturday. He said that he felt like he ought to be in court, but he did not think the case would go as bad as it did. And he figured he could testify later if he had to.

The trial court's denial of a continuance, premised as it was on

the court's failure to recognize that Ralph's testimony would have been admissible, coupled with the court's refusal to allow appellant an adequate opportunity to ascertain how long it would take to secure Ralph's attendance, was an abuse of discretion. His death sentences must therefore be set aside.

Appellant's convictions are affirmed. The sentences of death are reversed and the case remanded for a new trial on the sentences to be imposed for the murders.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Weltner and Bell, JJ., who dissent as to Division 11 and to the reversal.*

DECIDED JUNE 30, 1983 —
REHEARING DENIED JULY 21, 1983.

*George J. Thomas II,* for appellant.
*Rafe Banks III, District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.