## A00A0914. TURNER v. THE STATE.
### (539 SE2d 553)

BLACKBURN, Presiding Judge.

Aubrey Mark Turner appeals his convictions of aggravated assault on a police officer, theft by taking, possession of a gun during the commission of a felony, and manufacturing a destructive device. Turner raises 17 enumerations of error, many of which involve the same subject matter and, therefore, are consolidated in this opinion. For the reasons set forth below, Turner's convictions are affirmed.

1. In two enumerations of error, Turner challenges the sufficiency of the evidence to support his convictions of aggravated assault on a police officer and manufacturing a destructive device.

> On appeal the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility.

*Parrott v. State.*[1] See *Jackson v. Virginia.*[2]

So viewing the evidence, it reveals that Jeff Smith testified that he saw Turner take all the propane tanks from the front of Roopville Grocery around 4:00 one morning. He also testified that he had gone to school with Turner for 12 years. Two uniform deputies with the Carroll County Sheriff's Office, Richard Harrison and Kevin Johnson, responded to Smith's 911 call within five to fifteen minutes. Smith told the deputies that Turner had taken the propane tanks and told them where Turner lived. Deputy Harrison also knew Turner and knew where he lived.

After driving to the house where Turner lived, the officers parked their patrol vehicle approximately one car length behind the truck that was involved in the theft. Because it was a foggy morning, the officers left their patrol car's lights on and turned on their "takedown" lights. Deputy Harrison took an assault rifle found in the truck and locked it in the patrol car. While searching the yard with a flashlight, Deputy Johnson saw Turner crouched with a gun pointing in his direction. Deputy Johnson yelled, "Sheriff, drop the gun," but Turner fired his gun at Deputy Johnson. Turner continued to fire at Deputy Johnson while the deputy obtained cover. Deputy Johnson returned fire, and Turner was shot.

During his ambulance ride to the hospital, Turner told the paramedic that once "he's been drinking he tends to get bored." The

---

[1] *Parrott v. State*, 240 Ga. App. 173, 175 (2) (523 SE2d 29) (1999).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

paramedic also testified that Turner nodded his head "yes" when the paramedic asked if he knew he was shooting at police officers. While Turner was at the hospital, Turner's parents unlocked Turner's bedroom and allowed the officers to search it. The officers found PVC pipe bombs, several hand grenades that had the bottoms removed, gunpowder, an assortment of shotgun shells, and other ammunition.

(a) Turner contends that the evidence was insufficient to support his conviction of aggravated assault on a police officer because the State failed to prove that Turner knew he was shooting at police officers. Deputy Johnson testified, however, that he identified himself as "sheriff," when he told Turner to drop the gun. Additionally, the officers arrived in an official police vehicle and the "take-down" lights were left running. Furthermore, the paramedic testified that Turner responded affirmatively when asked if he knew he was shooting at police officers. The paramedic further testified that Turner said that he did not mean to do it, he did not want to hurt anyone, and he did not know why he did it. Turner asked the paramedic what was going to happen. After the paramedic responded that Turner would probably go to jail, Turner said it would probably do him some good.

This was sufficient evidence from which the jury could reasonably find that Turner was aware he was shooting at a police officer. See *Jackson*, supra.

(b) Turner contends that the evidence was insufficient to support his conviction of manufacturing a destructive device because the State failed to prove that the explosives found in his room were destructive devices as opposed to fireworks.

The State introduced the testimony of Kelly Fite, who was tendered and admitted as an expert in firearms and explosives. Fite testified that the items found in Turner's room were explosive devices. Fite opined that exploding the devices would cause the PVC pipe to fragment, injuring people and damaging property nearby. Christopher Bish, a bomb technician with the GBI, testified that his search of Turner's room indicated that explosive devices were being manufactured there. During his testimony, Bish reviewed all the items found in Turner's room with the jury. Bish distinguished one item as a firework-type device and determined that the other devices were pipe bombs capable of doing damage to people or property. When asked by Turner's counsel whether he felt like he had just left the Unibomber's house or just someone making large firecrackers, Bish responded: "In between. An individual was making bombs."

A destructive device is defined by OCGA § 16-7-80 (4) (A) as:

Any explosive, incendiary, or over-pressure device or poison gas which has been configured as a bomb; a grenade; a

rocket with a propellant charge of more than four ounces; a missile having an explosive or incendiary charge of more than one-quarter ounce; a poison gas; a mine; a Molotov cocktail; or any other device which is substantially similar to such devices.

The only evidence presented indicated that the items which Turner was charged with manufacturing were bombs. Bish testified that, in addition to the bombs themselves, he found all the items necessary to manufacture pipe bombs in Turner's room. Furthermore, the State also introduced several of Turner's handwritten notes found in his bedroom. The notes contained various demands when robbing a bank. For instance: "Hello, this is a robbery. Fill this bag with all your money right now. No alarms, [dye] packs or warnings or I will hurt you. I am heavily armed."

From this evidence, the jury was authorized to find that Turner was manufacturing bombs in his bedroom, rather than firecrackers. See *Jackson*, supra.

2. Turner contends that the trial court erred in denying his motion to suppress the evidence based upon the officer's failure to obtain a search warrant or legal consent. Turner asserts that because he kept his room locked and his parents did not go into his room uninvited, that they did not have authority to consent to the search of the room.[3]

"A warrantless search of a residence may be authorized by the consent of any person who possesses a sufficient relationship to the premises to be inspected. *United States v. Matlock*, 415 U. S. 164 (94 SC 988, 39 LE2d 242) (1974); *Peek v. State*, 239 Ga. 422 (238 SE2d 12) (1977)."

*Howard v. State*.[4] In *Howard*, the defendant lived in a house owned by his mother and sister. The defendant did not pay rent, but he did perform some household chores. Id. This Court determined, based upon those facts, that no landlord/tenant relationship existed and that the defendant's mother was authorized to consent to a search of the defendant's room. Id. See also *Williams v. State*.[5]

In the present case, Turner lived in his parents' house. Although he kept his door locked, his father had a key for emergencies. Turner

---

[3] Although Turner's trial counsel waived any error with regard to this enumeration by failing to secure a ruling on his motion to suppress, we address the merits of the motion because it relates to Turner's ineffective assistance of counsel claim that is addressed in Division 6.

[4] *Howard v. State*, 207 Ga. App. 125, 126 (1) (427 SE2d 96) (1993).

[5] *Williams v. State*, 166 Ga. App. 798 (305 SE2d 489) (1983).

did not pay rent, but he did do chores around the house and yard. When he was working, Turner's parents expected him to voluntarily contribute to the grocery expenses. Immediately prior to the incidents involved herein, Turner had been working stripping furniture, but he had not been paid. The owners of the house consented to the search of Turner's room. Additionally, the evidence available to the officers at the time of the search "justified one of reasonable caution in the belief that the consenting party [Turner's parents] had authority of the premises." *Ford v. State*.[6] See also *Illinois v. Rodriguez*[7] (warrantless search based on unauthorized consent could nonetheless be upheld if the law enforcement officer conducting the search reasonably, albeit erroneously, believed the consent given was valid).

For the foregoing reasons, the trial court correctly denied Turner's motion to suppress. *Underwood v. State*[8] (" 'the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment' ").

3. Turner contends that the trial court erred in allowing certain evidence and testimony before the jury. Turner argues that the testimony regarding the bank robbery notes and the State's question to its expert regarding the Centennial Olympic bombing required a mistrial. We disagree.

(a) The State's theory of the case was that the bank robbery notes established Turner's motive on the aggravated assault on a police officer count, i.e., Turner shot at the deputy officers in an effort to thwart their ability to discover the bank robbery notes. Additionally, the bank robbery notes establish a motive in the manufacturing of destructive devices. The State is entitled to present evidence of motive. *Johnson v. State*.[9]

Furthermore, the State did not seek to introduce the bank notes until Turner had testified at length regarding his good character, and " '[q]uestions of relevancy are generally matters within the trial court's discretion.' " *Sleeth v. State*.[10] Because Turner introduced his character into evidence, the bank notes were relevant to rebut his testimony regarding his good character.[11] Therefore, Turner has failed to show that the trial court abused its discretion in allowing the introduction of the bank robbery notes. See *Benford v. State*[12] (admission or exclusion of evidence reviewed on an abuse of discretion standard).

---

[6] *Ford v. State*, 214 Ga. App. 284, 286 (3) (447 SE2d 334) (1994).
[7] *Illinois v. Rodriguez*, 497 U. S. 177 (110 SC 2793, 111 LE2d 148) (1990).
[8] *Underwood v. State*, 218 Ga. App. 530, 531 (1) (462 SE2d 434) (1995).
[9] *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (1990).
[10] *Sleeth v. State*, 197 Ga. App. 349, 350 (3) (398 SE2d 298) (1990).
[11] OCGA § 24-9-20 (b).
[12] *Benford v. State*, 272 Ga. 348, 349-350 (3) (528 SE2d 795) (2000).

(b) Turner also asserts that the trial court should have granted, sua sponte, a mistrial because the State referred to the Centennial Olympic bomber when it questioned its expert. During the cross-examination of Bish, Turner's counsel brought up the Unibomber. Thereafter, the State asked Bish whether he shared information gathered from Turner's bedroom with the ATF in relation to its investigation of the Centennial Olympic bombing. Bish acknowledged that he informed the ATF that Turner's bombs were not similar to that used at Centennial Olympic Park.

Turner contends that this exchange required that the trial court sua sponte order a mistrial. However, there being no "manifest necessity" for a mistrial in the absence of a motion for one by Turner, it was not incumbent upon the trial court to grant a mistrial sua sponte. *Bennett v. State.*[13] Additionally, " '[t]he granting or denial of a mistrial is within the sound discretion of the trial court, and we will not disturb his ruling in the absence of abuse of that discretion.' " *Baker v. State.*[14]

Moreover, the State's question was in response to issues brought up by Turner's counsel, and the testimony actually distinguished Turner from the notorious bombers mentioned. The testimony is also clear that Turner's counsel was attempting to make such a comparison in an effort, albeit perhaps unsuccessful, to establish that Turner was making large fireworks rather than bombs such as those made by the Unibomber. Under these circumstances, we find no abuse of discretion by the trial court.

4. Turner contends that the trial court erred in failing to conduct a *Jackson-Denno* hearing regarding the admissibility of Turner's statements to the paramedic.

Prior to the paramedic's testimony, the State asked for a five-minute recess. The recess was not recorded. At the conclusion of the paramedic's testimony, Turner's counsel stated: "Let me just restate my objection that he wasn't being formally interrogated. You know, that that wasn't a — it may not have been a voluntary confession." Based on the renewal of objection to the paramedic's testimony, we must conclude that Turner's counsel had previously objected and the argument was made off the record. Additional evidence supports this conclusion: At the end of the trial, the trial court went through Turner's motions and gave rulings on the record. The State argued regarding Turner's statements to the paramedic: *"Again*, we will contend that the paramedic is not law enforcement. At that point the defendant was not being interrogated, and these statements were

---

[13] *Bennett v. State,* 262 Ga. 149, 154 (14) (414 SE2d 218) (1992).
[14] *Baker v. State,* 238 Ga. App. 285, 288 (2) (518 SE2d 455) (1999).

spontaneous and were, again, not to law enforcement and, therefore, those statements were admissible." (Emphasis supplied.)

We first address whether the trial court erred in failing to hold a *Jackson-Denno* hearing on the admissibility of the paramedic's testimony. This issue raises two points: First, whether Turner was entitled to a *Jackson-Denno* hearing; and second, whether he was entitled to a hearing regarding the voluntariness of his confession pursuant to OCGA § 24-3-50. As we previously held in *Griffin v. State*,[15] where there is no official action by the State, the defendant is not entitled to a *Jackson-Denno* hearing. In this case, the record before us is unclear as to whether a hearing regarding the voluntariness, OCGA § 24-3-50, took place. In fact, the colloquy on the record between the trial court and the counsel indicates that the issue was heard by the trial court. Therefore, to the extent that Turner raised a voluntariness issue pursuant to OCGA § 24-3-50, we find that Turner has not shown that he did not receive a hearing. See *Griffin*, supra at 322-323 (issue regarding voluntariness of confession pursuant to OCGA § 24-3-50 must be raised in the trial court).

We now turn to whether the paramedic's testimony regarding Turner's statements was properly admitted. Turner's trial counsel filed two motions seeking suppression of Turner's involuntary admissions, confessions, or statements. Neither of these motions raised the issue of whether Turner's rights under OCGA § 24-3-50 were violated. See *Griffin*, supra. As the defendant's voluntary statements are admissible, we find no error in the trial court's allowance of the paramedic's testimony.

5. Turner contends that the trial court erred in failing to charge the jury on the definition of destructive devices and the definition of fireworks. Turner argues that such requests to charge were required, even without a request, because proof that the item seized was a destructive device was an essential element of the crime and his sole defense was that the device was a firecracker rather than a destructive device.

(a) The trial court did not err in failing to charge the jury on the definition of destructive device. "In the absence of request, the court's failure to define the meaning of terms used in the charge is not ordinarily ground for reversal. In any event, it is not error for the trial court to fail to define terms in common usage, even upon request." (Citations and punctuation omitted.) *Floyd v. State*.[16] In *Floyd v. State*, the trial court had failed to charge on the definition of sodomy, which was an element of the offense charged. See id. Similarly in the

---

[15] *Griffin v. State*, 230 Ga. App. 318, 322 (496 SE2d 480) (1998).
[16] *Floyd v. State*, 193 Ga. App. 17 (387 SE2d 16) (1989).

present case, although destructive device was an element of the offense charged, the trial court did not err in failing to charge its definition. The indictment, which the trial court charged, specified explosive device and destructive device. The experts defined the items found in Turner's bedroom as explosive devices, destructive devices, and bombs. The determination that a bomb is a destructive device is not beyond the ken of the jury.

(b) Initially, we note that ordinarily "[w]here there has been no written request to charge, failure to give the charge is not error." (Punctuation omitted.) *Bartel v. State*.[17] However, we have found situations where failure to give a charge on the defendant's sole defense, even without a request, was reversible error. *Stiles v. State*.[18] "The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge." *Tarvestad v. State*.[19]

In the present case, the trial court was not required to charge on the definition of fireworks because there was no evidence presented that the items found in Turner's bedroom for which he was charged with manufacturing were firecrackers and not bombs. Although Turner testified that he made firecrackers, he did not testify that the items found in his bedroom were firecrackers. In fact, the firecrackers that he described making did not resemble the items found. The only testimony regarding the items found in Turner's bedroom was introduced by the State and indicated that such items were bombs. Therefore, under the facts of this case, a charge on the manufacturing of firecrackers would not have been adjusted to the evidence. See *Edwards v. State*[20] (failure to charge on lesser offense is not error where there is no evidence of the lesser offense).

6. In nine enumerations of error Turner contends that his trial counsel was ineffective. Turner asserts that his trial counsel failed by: not obtaining a ruling on his motion to suppress the evidence found in his bedroom; not objecting to the testimony regarding the bank notes; introducing additional bank notes; not objecting to the reference to the Centennial Olympic bombing; asking the State's expert to compare Turner's bombs to those made by the Unibomber; not obtaining a ruling on his motion to suppress his statements made to the paramedic; not requesting a jury charge on the definition of destructive devices; not reserving objections to the jury charge; and not properly communicating a plea bargain. The trial court denied Turner's motion for new trial and found that Turner had received

[17] *Bartel v. State*, 202 Ga. App. 458, 459 (3) (414 SE2d 689) (1992).
[18] *Stiles v. State*, 242 Ga. App. 484, 486 (1) (529 SE2d 913) (2000).
[19] *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991).
[20] *Edwards v. State*, 264 Ga. 131, 132 (442 SE2d 444) (1994).

effective assistance of counsel. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous. *Garrett v. State.*[21]

> To establish a claim of ineffective assistance of counsel, [Turner] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). [Turner] must establish both the performance and the prejudice components of the *Strickland* test. *Johnson v. State*, 222 Ga. App. 722, 728 (9) (475 SE2d 918) (1996). "A conviction will not be reversed on the basis of ineffective assistance of counsel unless counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Citation and punctuation omitted.) *Cunningham v. State*, 222 Ga. App. 740, 743-744 (2) (475 SE2d 924) (1996); *Strickland v. Washington*, supra at 669. "Furthermore, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy." (Citations and punctuation omitted.) *Clay v. State*, 232 Ga. App. 656, 657 (503 SE2d 560) (1998); *Strickland v. Washington*, supra at 689.

*McGhee v. State.*[22]

> [Turner] did not subpoena his trial counsel to appear at the hearing on his motion for new trial. Thus, [Turner] made no affirmative showing that the purported deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy. *Garrett v. State*, [supra at 873 (1)]. See also *Harris v. State*, 198 Ga. App. 503 (402 SE2d 62)[, rev'd on other grounds, 261 Ga. 386 (405 SE2d 482)] (1991); *McCarthy v. State*, 196 Ga. App. 839, 841 (4) (397 SE2d 178) (1990); *Allsop v. State*, 196 Ga. App. 379, 381-382 (396 SE2d 47) (1990); *Balduf v. State*, 190 Ga. App. 233 (378 SE2d 409)

---

[21] *Garrett v. State*, 196 Ga. App. 872, 874 (1) (397 SE2d 205) (1990).
[22] *McGhee v. State*, 237 Ga. App. 541, 543-544 (1) (515 SE2d 656) (1999).

(1989). Although *arguendo* [Turner's] representation may have been less than perfect, there is no indication in the record that the conduct of his counsel met the *Strickland v. Washington*, [supra,] criteria denoting ineffective assistance. A defendant is entitled not to perfect representation but to reasonably effective assistance. See *Gabler v. State*, 177 Ga. App. 3, 6 (338 SE2d 469) (1985). The burden is on the party alleging error to show it affirmatively by the record, and when he does not do so, the judgment is assumed to be correct and must be affirmed. *Griner v. State*, 192 Ga. App. 283 (384 SE2d 398) (1990). *Anderson v. State*, 197 Ga. App. 54, 55 (397 SE2d 557) (1990).

(Punctuation omitted.) *Foreman v. State*.[23]

With these principles in mind, we have reviewed the trial court's determination that Turner was afforded effective assistance of counsel. We find that either: (a) Turner's claims are substantively meritless as addressed in the Divisions above; (b) Turner failed to show affirmatively by the record in his motion for new trial that his alleged errors were not the result of trial strategy; or (c) the alleged errors "were not shown to have prejudiced [Turner's] defense so that there is a reasonable possibility that the outcome of the proceedings would have been different." *Braswell v. State*.[24] Therefore, the trial court's determination was not clearly erroneous.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED SEPTEMBER 19, 2000 — 

*Johnson, Word & Simmons, Gerald P. Word*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.

---

[23] *Foreman v. State*, 200 Ga. App. 400, 401 (3) (408 SE2d 178) (1991).
[24] *Braswell v. State*, 245 Ga. App. 602, 606-607 (538 SE2d 492) (2000).