Justice Marshall,
dissenting.
I
Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, Gregg v. Georgia, 428 U. S. 153, 231-241 (1976) (Marshall, J., dissenting), I would vacate the decision below insofar as it left undisturbed the death sentence imposed in this case.
II
Even if I did not hold this view, I would vacate petitioner’s sentence of death for reconsideration in light of this Court’s recent decision in Lowenfield v. Phelps, ante, p. 231. The Court in Lowenfield rejected a claim, similar to the one advanced by petitioner in this case, that the administration of an Allen charge to a capital sentencing jury was coercive. The Court recognized, however, that such a charge must be considered “‘in its context and under all the circumstances.’” Ante, at 237 (quoting Jenkins v. United States, 380 U. S. 445, 446 (1965) (per curiam,)). Moreover, the Court explicitly limited its holding to the facts of the case before it, stating that “we do not mean to be understood as saying other combinations of supplemental charges and polling might not require a different conclusion.” Ante, at 241. The circumstances surrounding the administration of the Allen charge in the instant case differed substantially from those in Lowenfield. Moreover, they did so in ways that the Court in Lowenfield recognized as relevant to the issue of coercion. The Georgia Supreme Court therefore should be given an opportunity to reevaluate petitioner’s sentence in light of this Court’s decision in Lowenfield.
Petitioner Larry Romine was convicted of capital murder and sentenced to death. His death sentence was reversed on appeal by the Georgia Supreme Court, and the case was remanded for a new sentencing trial. 251 Ga. 208 (1983). On retrial, after almost seven hours of deliberations and an overnight recess, the foreman of the jury sent the court a note that read: “We are unable to reach a unanimous decision and are certain we will not *1049 ever be able to reach one.” App. A to Pet. for Cert. 3. The court called the jury in and inquired: “[C]an you just give me the numerical breakdown of how you stand?” Ibid. The foreman replied that the jury was divided 11 to 1. The court sent the jury back for further deliberations, over the objection of defense counsel. When the jury still had not reached a verdict 572 hours later, the court called the jury in again to give it “some other instructions.” Id., at 4. The court then administered an Allen charge, urging the jurors to reexamine the grounds of their opinions and attempt to reach a verdict. Two hours later, the jury returned a unanimous verdict of death.
In Georgia, as in Lowenfield’s State of Louisiana, a hung jury in a capital sentencing trial results in the automatic imposition of a life sentence. See Ga. Code Ann. § 17-10-31 (1982); Hill v. State, 250 Ga. 821, 301 S. E. 2d 269 (1983); Miller v. State, 237 Ga. 557, 229 S. E. 2d 376 (1976). Thus, the State’s usual interest in an Allen charge — avoiding the societal costs of a retrial — is not present. The Court in Lowenfield recognized that this difference “weighs in the constitutional calculus.” Ante, at 238. The Court nonetheless concluded that the circumstances surrounding the administration of the charge in Lowenfield’s case did not warrant a reversal on the ground of jury coercion. The discussion in Lowenfield, however, indicates that the circumstances relevant to petitioner’s claim may produce a different result in the “constitutional calculus.”
First, the jury polling that preceded the Allen charge in this case was far more coercive than the polling tolerated in Lowenfield. The Court in Lowenfield took great pains to establish that “the inquiry as to the numerical division of the jury was not as to how they stood on the merits of the verdict, but how they stood on the question whether further deliberations might assist them in returning a verdict.” Ante, at 240. Here, the court’s question undoubtedly was directed at the jury’s division on the merits, placing it squarely within this Court’s holding in Brasfield v. United States, 272 U. S. 448 (1926), which the Lowenfield Court held to be “instructive as to the potential dangers of jury polling.” Ante, at 240.
Second, the jury’s expression of its deadlock was much more unequivocal in this case than in Lowenfield. In Lowenfield, the jury’s note to the court stated that it was unable to reach a verdict at that time. Ante, at 234. In the instant case, the jury not only stated that it was unable to reach a unanimous decision, but speci *1050 fled that “[w]e . . . are certain we will not ever be able to reach one.” App. A to Pet. for Cert. 3 (emphasis added). After such an emphatic statement of deadlock, followed by 5V2 hours of further unsuccessful deliberations, the jury may well have inferred from an Allen charge that the court was absolutely set on unanimity and unwilling to settle for anything less.
Third, the jury in this case did not request to be reinstructed, as did the jury in Lowenfield. Moreover, whereas the court in Lowenfield merely reiterated the part of its original jury instructions dealing with the jury’s duty to deliberate with an open mind, the court’s supplemental charge in this case was by its own admission different from the instructions given at the commencement of deliberations. The fact that the court summoned the jury on its own accord to deliver new and unfamiliar instructions heightened the coerciveness of the verdict-urging charge. See, e. g., United States v. Seawell, 550 F. 2d 1159, 1163 (CA9 1977) (Allen charge should not be given during deliberations unless jury requests it); United States v. Blandin, 784 F. 2d 1048, 1050 (CA10 1986) (Allen charge should be given during the court’s original jury instructions rather than during the course of deliberations).
Finally, the polling in this case revealed a division of 11 to 1, and the trial judge knew of this division when he decided to give the Allen charge 572 hours later. Furthermore, it was clear to the lone dissenting juror that the judge knew that there was only one holdout when he decided to give the charge. In Lowenfield, by contrast, the jury itself had requested the charge, so the single juror identified by the second poll could not have speculated that the results of the poll motivated the judge to give the charge. The dissenting juror in each case may have interpreted the charge as being directed at him or her alone. But the administration of the charge in the instant case would have communicated to the dissenter the judge’s exasperation with her failure to capitulate.
I was convinced by the circumstances surrounding the Allen charge in Lowenfield that coercion of the jury had indeed occurred. But the circumstances of the instant case are significantly more coercive than those I condemned in Lowenfield. The majority opinion in Lowenfield promised that future cases would be considered on their particular facts and that the Lowenfield decision did not give carte blanche to state trial courts to use polling procedures and Allen charges indiscriminately during capi *1051 tal sentencing proceedings. That promise requires that the Georgia Supreme Court be given an opportunity to reconsider the circumstances surrounding the Allen charge in this case in light of this Court’s discussion of jury coercion in Lowenfield. I dissent.